**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3328-13T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MICHAEL PALMER,

    Defendant-Appellant.

_____

Submitted March 29, 2017 — Decided July 18, 2017

Before Judges Simonelli and Carroll.

On appeal from the Superior Court of New
Jersey, Law Division, Essex County, Indictment
No. 01-10-4196.

Joseph E. Krakora, Public Defender, attorney
for appellant (Richard Sparaco, Designated
Counsel, on the brief).

Carolyn A. Murray, Acting Essex County
Prosecutor, attorney for respondent (Sara A.
Friedman, Special Deputy Attorney General/
Acting Assistant Prosecutor, of counsel and
on the briefs).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Michael T. Palmer appeals from the December 17, 2013 Law Division order, which denied his petition for post-conviction relief without an evidentiary hearing.  We affirm.

I.

Following a jury trial, on October 27, 2003, defendant was convicted of first-degree murder, N.J.S.A. 2C:11-3(a) (count one); third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count two); and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a).  At sentencing on October 27, 2003, Judge Thomas M. McCormack merged count three with count one and imposed a thirty-year term of imprisonment with a thirty-year period of parole ineligibility on count one, and a concurrent thirty-year term of imprisonment on count two.

The charges against defendant stemmed from the shooting death of Tarrod Grantham, known locally as Rallo, at approximately 4:25 p.m. on August 4, 2001, at 2089 Columbia Avenue in Irvington.[1]  The State's case relied heavily on the testimony of an eyewitness, C.D., who was fourteen years old at the time of the shooting and resided at 2087 Columbia Avenue.  According to C.D., she was outside her home between 3:00 p.m. and 3:30 p.m. when she saw

_____

[1]  We use fictitious house numbers in order to protect the identity of the persons involved in this case.

Rallo walking toward 2089 Columbia Avenue, and then go up the steps of the building. C.D. saw Rallo standing on the front porch with his friend "Slick." C.D. then re-entered her home.

C.D. testified that at approximately 4:20 p.m., she returned to the porch of her home with her friend Marsha. She saw Rallo and Slick outside 2089 Columbia Avenue, and saw a person named Mike walking toward 2089 Columbia Avenue. C.D. identified defendant as Mike, and testified that she had seen him in the neighborhood more than twenty times.

C.D. testified that as Mike approached 2089 Columbia Avenue, Slick ran inside the building. She saw Mike draw near to Rallo and point his right arm at Rallo, who was standing on the steps. She "heard a boom, like a firecracker shot," saw smoke, and ran up the steps. She then saw Mike running toward Eighteenth Avenue. She ran to Rallo and saw that he had been shot in the chest.

When the police arrived at the scene, C.D. told an officer that Mike shot Rallo and provided a physical description of Mike. She then went to the police station to make a photo identification of Mike and to give a statement. She testified that she went through approximately twenty photos on the computer and was able to identify defendant as Mike from one of the photos. The police eventually located defendant and arrested him on August 28, 2001.

C.D. also made an in-court identification of defendant as the shooter.

C.D. did not identify anyone other than Mike, Rallo, Slick, and Marsha as being present at the time of the shooting. A detective attempted to locate additional witnesses to the shooting, but none came forward, and neither the second floor tenant at 2089 Columbia Avenue nor any other spectators at the scene had helpful information.

Defendant's trial counsel went to the crime scene, but found little to investigate due to the passage of time since the shooting and the alteration of the buildings. The buildings at 2087 and 2089 Columbia Avenue had been vacated and boarded up in the Spring following the shooting. Trial counsel also spoke to defendant about the possibility of using Slick as a witness, but defendant instructed counsel not to speak to him.

Trial counsel also tried to contact C.D., but discovered she had moved. Counsel eventually received C.D.'s new address shortly before trial, but never spoke to her. C.D. had given three statements that differed in some degree, so counsel decided to rely on those statements and try to exploit the inconsistencies at trial. At trial, counsel extensively cross-examined C.D. about her inconsistent statements.

Prior to sentencing, defendant sought a new trial based, in part, on trial counsel's ineffective assistance in failing to investigate witnesses. Following an evidentiary hearing, at which trial counsel testified, Judge McCormack denied the motion, holding that counsel's performance was not deficient. Specifically, the judge stated that counsel's investigation of the case, her consultations with defendant, and her trial strategy could not be considered deficient.

Defendant appealed his conviction and denial of his motion for a new trial, arguing, in part, that trial counsel rendered ineffective assistance by failing to investigate and call C.B., another eyewitness to the shooting. While the appeal was pending, defendant filed a motion with this court to supplement the record to include Irvington Police Department reports of two interviews with C.B., dated August 26, 2004 and February 8, 2005, and a photo display and photograph form signed by C.B., dated February 7, 2005, signed by C.B. In support of his motion, defendant stated that the supplemental material buttressed his contention that trial counsel's performance was deficient because C.B. had been located and her recollection of the events exculpated him.

We affirmed, but remanded to correct the judgment of conviction (JOC) to reflect a concurrent three-year term of imprisonment on count two. State v. Palmer, No. A-2576-03 (App.

Div. Dec. 14, 2006) (slip op. at 15). We did not preclude defendant from pursuing PCR based on information or evidence that C.B. may have concerning the events of the afternoon of August 4, 2001. Id. (slip op. at 14). We found the supplemental material was, on its face, equivocal, and the information provided by C.B. was not exculpatory. Id. (slip op. at 14-15). However, we determined that none of the supplemental material was presented to the trial judge, and we did not preclude further consideration of this material in a subsequent PCR petition. Id. (slip op. at 15). Our Supreme Court denied certification. State v. Palmer, 194 N.J. 268 (2008).

Defendant filed a PCR petition, certifying that trial counsel rendered ineffective assistance by failing to investigate and call C.B. In support of his motion, defendant submitted an affidavit from C.B., dated August 12, 2012. Defendant also submitted an affidavit from C.B.'s mother, T.B., who was present during the police interviews with C.B. PCR counsel argued in his brief that trial counsel also rendered ineffective assistance by failing to call other witnesses and coercing defendant not to testify at trial; however, defendant did not certify to these facts and did not submit certifications from the alleged witnesses.

On February 28, 2011, Judge McCormack entered an order granting an evidentiary hearing, but limiting the hearing to all

evidence discovered after defendant's conviction relating to trial counsel's alleged failure to investigate and call C.B. The order also included T.B.

At the start of the hearing before Judge Alfonse J. Cifelli, defendant stated that in addition to C.B., he wanted to present evidence relating to trial counsel's failure to investigate other witnesses prior to and after trial. Judge Cifelli enforced Judge McCormack's February 28, 2011 order, and declined to expand the scope of the hearing beyond evidence discovered after defendant's conviction relating to trial counsel's failure to investigate and call C.B.

At the hearing, C.B. testified that she was eleven years old at the time of the shooting, and had signed the affidavit on August 12, 2012, which stated that on August 4, 2001, she was outside playing with C.D. when she saw a person known as Mike run between two houses and run to the porch of 2089 Columbia Avenue where Rallo and Slick were hanging out. Mike walked up to Rallo, held out his arm, and she heard a popping sound. C.B. testified she only saw the shooter's face from an angle from where she was sitting on the front of her house and it was C.D. who told her that the shooter was Mike.

C.B. testified that the Mike she saw on August 4, 2001 was not in a photo array shown to her on February 7, 2005. She also

testified that she did not recognize and could not identify any of the people in the photo array shown to her, and acknowledged that the shooter could have been in the photos, but she was not sure. She admitted that she could not say with certainty that defendant was or was not the shooter. She testified that she did not come forward before August 26, 2004, because she did not want to get involved and her mother did not want her involved. She also testified that she would not have been willing to testify at trial absent a court order or subpoena.

T.B. testified that C.B. ran into the house and told her that someone got shot. She testified that she probably would not have permitted C.B. to provide any information to the police about the shooting, or provide any information herself. She also testified that she probably would not have allowed C.B. to testify at trial without a court order or subpoena out of concern for C.B.'s safety and because C.B. was a child.

Judge Cifelli denied the petition. In a December 17, 2013 oral opinion, the judge found defendant failed to show that trial counsel's performance was deficient, and even if deficient, that the outcome would have been different. The judge found that C.B.'s potential testimony would have provided "no discernible assistance to [defendant's] defense or any impact on the outcome of the

8                                          A-3328-13T2

trial[,]" as she "was clearly not able to provide any [firsthand] information concerning the shooter and/or his identity[.]"

Judge Cifelli also found trial counsel's alleged failure or inability to locate C.B., be it from lack of effort or otherwise, inconsequential to defendant's conviction for murder. The judge determined that C.B.'s potential testimony would not have contradicted or impeached C.D.'s positive in- and out-of-court identifications of defendant as the shooter, and C.D.'s testimony was sufficient for the jury to find defendant guilty of murder.

On appeal, defendant raises the following contentions:

> POINT I — [PCR] SHOULD HAVE BEEN GRANTED WHERE TRIAL COUNSEL FAILED TO INTERVIEW AND PRESENT TESTIMONY THAT WOULD CONTRADICT THE STATE'S ONLY EYEWITNESS.
>
> POINT II — DEFENDANT WAS ENTITLED TO AN EVIDENTIARY HEARING ON THE ISSUE RAISED IN HIS [PCR] PETITION CONCERNING THE ALLEGATION THAT TRIAL COUNSEL COERCED THE DEFENDANT TO REFRAIN FROM TESTIFYING.

Defendant raises the following contentions in a pro se supplemental brief:

POINT I

> The PCR Court improperly denied Defendant the Right to Present Evidence and Witnesses Contrary to Judge McCormack's Order Relating to Trial Counsel's Failure to Investigate.

POINT II

> PCR Counsel Was Ineffective For Failing to Honor the Defendant's Request And Ask C.B. Questions Regarding the Fight [Defendant] Had With [the victim] the Day Before He Was Murdered.

The mere raising of a claim for PCR does not entitle the defendant to an evidentiary hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div.), certif. denied, 162 N.J. 199 (1999). Rather, trial courts should grant evidentiary hearings and make determinations on the merits only if the defendant has presented a prima facie claim of ineffective assistance of counsel, material issues of disputed fact lie outside the record, and resolution of the issues necessitates a hearing. R. 3:22-10(b); State v. Porter, 216 N.J. 343, 355 (2013). To establish a prima facie claim of ineffective assistance of counsel, the defendant

> must satisfy two prongs. First, he must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. An attorney's representation is deficient when it [falls] below an objective standard of reasonableness.
>
> Second, a defendant must show that the deficient performance prejudiced the defense. A defendant will be prejudiced when counsel's errors are sufficiently serious to deny him a fair trial. The prejudice standard is met if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability simply

10

> means a probability sufficient to undermine confidence in the outcome of the proceeding.
>
> [State v. O'Neil, 219 N.J. 598, 611 (2014) (citations omitted).]

"[I]n order to establish a prima facie claim, [the defendant] must do more than make bald assertions that he was denied the effective assistance of counsel. He must allege facts sufficient to demonstrate counsel's alleged substandard performance." Cummings, supra, 321 N.J. Super. at 170. The defendant must establish, by a preponderance of the credible evidence, that he is entitled to the relief requested. State v. Nash, 212 N.J. 518, 541 (2013). "[W]hen a [defendant] claims his trial attorney inadequately investigated his case, he must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." Porter, supra, 216 N.J. at 353 (quoting Cummings, supra, 321 N.J. Super. at 170).

Our Supreme Court has established the standard of review in PCR cases where the court held an evidentiary hearing:

> In reviewing a PCR court's factual findings based on live testimony, an appellate court applies a deferential standard; it will uphold the PCR court's findings that are supported by sufficient credible evidence in the record. Indeed, [a]n appellate court's reading of a cold record is a pale substitute for a trial judge's assessment of the credibility of a witness he has observed firsthand. However,

11

> a PCR court's interpretation of the law is afforded no deference, and is reviewed de novo. [F]or mixed questions of law and fact, [an appellate court] give[s] deference . . . to the supported factual findings of the trial court, but review[s] de novo the lower court's application of any legal rules to such factual findings.
>
> [State v. Pierre, 223 N.J. 560, 576-77 (2015) (citations omitted).]

We review a judge's decision to deny a PCR petition without an evidentiary hearing for abuse of discretion. State v. Preciose, 129 N.J. 451, 462 (1992).

## II.

Defendant contends in Point I of his merits brief that Judge Cifelli erred in denying PCR because the evidence showed that trial counsel failed to interview and call C.B., whose testimony would have called C.D.'s testimony into question. Since Judge Cifelli granted an evidentiary hearing on this issue, we must determine whether his findings are supported by sufficient credible evidence in the record.

Generally, a criminal defense attorney "has a duty to make reasonable investigations or make a reasonable decision that makes particular investigations unnecessary." Strickland v. Washington, 466 U.S. 668, 691, 104 S. Ct. 2052, 2006, 80 L. Ed. 2d 674, 695 (1984). The failure to investigate potential witnesses may constitute ineffective assistance. State v. Deutsch, 229 N.J.

12

Super. 374, 377 (App. Div. 1988) (citation omitted). A defendant may also establish ineffective assistance by showing that counsel failed to call exculpatory witnesses on his behalf. State v. Petrozelli, 351 N.J. Super. 14, 25 (App. Div. 2002). Moreover, "[t]he complete failure to investigate potentially corroborating witnesses cannot be attributed to trial strategy." State v. Arthur, 184 N.J. 307, 342 (2005) (citations omitted). However, the "decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland v. Washington, supra, 466 U.S. at 691, 104 S. Ct. at 2066, 80 L. Ed. 2d at 695.

The record amply supports Judge Cifelli's finding that defendant failed to show trial counsel's performance was deficient, and that even if deficient, the outcome would have been different. C.B. was not an exculpatory witness. She had no first-hand information about the shooter and/or his identity and could not say with certainty whether or not defendant was the shooter. In addition, C.B.'s potential testimony would not have been that the shooter was not in the photo array shown to her over three years after the shooting, but only that she could not make any identification and did not know if the shooter was in the array. Nor would C.B.'s potential testimony have impeached or contradicted C.D.'s positive identifications of defendant as the

shooter. Clearly, if C.B. had testified at trial, it would not have changed the result. She would not have testified that defendant was not the shooter.

## III.

Defendant contends in Point II of his merits brief that Judge Cifelli erred in limiting the scope of the evidentiary hearing and denying a hearing on his claim that trial counsel coerced him not to testify and failed to investigate other witnesses. However, there is no credible evidence in the record supporting this argument, as defendant did not certify that trial counsel coerced him not to testify. Defendant also did not submit affidavits from the alleged witnesses asserting the facts to which they would have testified. Porter, supra, 216 N.J. at 353.

In any event, defendant's contention that Judge Cifelli improperly limited the scope of the evidentiary hearing lacks merit. The limitation complied with our preservation of defendant's right to pursue PCR based on post-conviction evidence relating only to C.B. See Palmer, supra, (slip p. at 14-15). We did not preserve any other issue for PCR.

Defendant's contention that trial counsel coerced him not to testify also lacks merit. The record belies defendant's claim that trial counsel coerced him not to testify.

14                                                    A-3328-13T2

"As with the right against self-incrimination, . . . 'it is the responsibility of a defendant's counsel, not the trial court, to advise defendant on whether or not to testify and to explain the tactical advantages or disadvantages of doing so or not doing so." State v. Savage, 120 N.J. 594, 630 (1990) (quoting State v. Bogus, 223 N.J. Super. 409, 423 (App. Div. 1988)). As the Court stated:

> Counsel's responsibility includes advising a defendant of the benefits inherent in exercising that right and the consequences inherent in waiving it. To ensure that counsel meets that obligation, it may be the better practice for a trial court to inquire of counsel whether he or she had advised a defendant . . . of his or her right to testify. This will best ensure that defendant's constitutional rights are fully protected. Indeed, counsel's failure to do so will give rise to a claim of ineffectiveness of counsel.
>
> [Id. at 631.]

Here, Judge McCormack asked trial counsel if defendant intended to testify, and counsel responded no. The following colloquy then occurred:

> [COUNSEL]: Mr. Palmer, you understand that if you choose to, you can actually take the stand in your own defense?
>
> THE DEFENDANT: Yes.
>
> [COUNSEL]: And you're aware that we're ready and willing to proceed that way today?
>
> THE DEFENDANT: Yes.

[COUNSEL]: Isn't it true that I have been representing you since, I believe March 3rd of this year?

THE DEFENDANT: Yes.

[COUNSEL]: And I have met with you on numerous occasions to discuss defense strategy?

THE DEFENDANT: Yes.

[COUNSEL]: And during these conversations we discussed your possibly taking the stand. Is that correct?

THE DEFENDANT: Yes.

[COUNSEL]: And we have made the decision — you personally made the decision for you not to testify?

THE DEFENDANT: Yes.

[COUNSEL]: And you did so after consulting me?

THE DEFENDANT: Yes.

[COUNSEL]: After consulting with numerous family members?

THE DEFENDANT: Yes.

[COUNSEL]: Do you understand that you are giving up then your right to testify in your own behalf?

THE DEFENDANT: Yes.

[COUNSEL]: Are you doing so freely and voluntarily?

THE DEFENDANT: Yes.

[COUNSEL]: And no one is forcing you to do that?

THE DEFENDANT: Yes — I mean no.

[COUNSEL]: Are you doing it voluntarily?

THE DEFENDANT: Yes.

[COUNSEL]: Are you under the influence of any alcohol or drug that would cloud your thoughts this morning?

THE DEFENDANT: No.

[COUNSEL]: Thank you.

THE COURT: Has your attorney had the opportunity to fully explain to you your options and the ramifications or the effect of each decision you make as to whether to testify or not testify in this case?

THE DEFENDANT: Yes.

THE COURT: Do you have any further questions you need to discuss with [counsel] with respect to your decision not to testify?

THE DEFENDANT: No.

It is clear from this colloquy that trial counsel advised defendant of his right to testify, he freely and voluntarily waived that right, and he was not forced to do so. Trial counsel's performance in this regard was not deficient.

IV.

We have considered defendant's contentions in Points I and II of his pro se supplemental brief in light of the record and

17

applicable legal principles and conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION