**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2320-17T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

NASIR SALAAM, a/k/a
NASIR JAMEEL SALAAM,

    Defendant-Appellant.

_____

        Submitted May 15, 2019 – Decided July 15, 2019

        Before Judges Koblitz, Currier and Mayer.

        On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 08-02-0310.

        Joseph E. Krakora, Public Defender, attorney for appellant (David Anthony Gies, Designated Counsel, on the briefs).

        Gurbir S. Grewal, Attorney General, attorney for respondent (Sarah D. Brigham, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Nasir Salaam appeals from the October 16, 2017 order denying his petition for post-conviction relief on the basis of ineffective assistance of counsel after an evidentiary hearing, following our remand for that purpose. We affirm.

This matter stems from a 2007 gas station robbery-homicide involving three juveniles waived to adult court: defendant, Darrick Hudson and Basir Biggins.[1] Adult co-defendants Tyler Hart and Gina McCrosson were also charged in various counts of the indictment in relation to driving the juveniles to the gas station. When police first questioned defendant upon his arrest a day after the murder, he denied his involvement in the incident. More than a month later, his privately-retained counsel advised him to cooperate with the prosecutor and provide an incriminating statement to police regarding his involvement. In defendant's second statement, he told police that while he was

---

[1] Defendant was charged with first-degree felony murder, N.J.S.A. 2C:11-3(a)(3); three counts of first-degree armed robbery, N.J.S.A. 2C:15-1; second-degree conspiracy to commit armed robbery of employees of the gas station, N.J.S.A. 2C:15-1 and N.J.S.A. 2C:5-2; second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); second-degree possession of two .22 caliber revolvers for an unlawful purpose, N.J.S.A. 2C:39-4(a); third-degree unlawful possession of the two revolvers, N.J.S.A. 2C:58-4 and N.J.S.A. 2C:39-5(b); third-degree hindering prosecution, N.J.S.A. 2C:29-3(b)(1); and third-degree conspiracy to distribute heroin, N.J.S.A. 2C:35-5(a)(1), N.J.S.A. 2C:35-5 (b)(3), and N.J.S.A. 2C:5-2.

asking the gas attendants for money at gun-point, his co-defendants entered the mini-mart and fatally shot the victim.

Defendant proceeded to trial and the State introduced his second, incriminating statement into evidence. The jury found defendant guilty of armed robbery of the two attendants outside the mini-mart, aggravated assault of one of the attendants who defendant admitted shooting, weapons offenses, hindering apprehension, and conspiracy to distribute heroin. The jury was unable to reach a unanimous verdict on the robbery and felony murder counts relating to the deceased victim inside the mini-mart. The court declared a mistrial on those remaining charges. Before proceeding to trial for a second time, defendant pled guilty to felony murder and received a sentence of forty years in prison with a thirty-year period of parole ineligibility on all convictions.

When defendant appealed the denial of his motion for post-conviction relief (PCR), because defense counsel had "secured no plea agreement nor any agreement not to use the statement against defendant," State v. Salaam, No. A-3989-14 (App. Div. Jan. 31, 2017) (slip op. at 2), we reversed and remanded:

> for a hearing to resolve conflicting testimony given by defense counsel, defendant, and defendant's mother regarding defense counsel's representations to defendant about a plea agreement or potential agreement prior to the statement. Regardless of the nature of defense counsel's advice, the court must also

A-2320-17T3

determine at the hearing whether counsel's production of his juvenile client to give a self-incriminating statement under these circumstances – after conferring only with a co-defendant's counsel and prior to the completion of discovery – was a fundamental deprivation of counsel pursuant to United States v. Cronic, 466 U.S. 648, 661 (1984).

[Ibid.]

After a full evidentiary hearing, the PCR court again denied the petition. Defendant testified his counsel represented to him and his family that a plea agreement had been secured prior to defendant giving his second statement, and argued that advising defendant to provide an incriminating statement without a secured plea deal constituted ineffective assistance of counsel. The PCR court found defense counsel made no representation to defendant or his family that he had secured a promise from the State before defendant provided his second statement, and in light of the overwhelming evidence against him, it was not constitutionally deficient trial strategy to cooperate with the prosecutor and provide the second statement. The PCR court found defense counsel sought information from a co-defendant's counsel, who was experienced with the local prosecutor's office and thought defendant's cooperation would facilitate a plea offer in the "high teens, low twenties." Unexpectedly, the Attorney General's Office (AG) took over the prosecution. Defense counsel testified he had never

before or after presented a client to the police to give a statement without a plea offer in place.

Defendant raises the following issues on appeal:

> POINT I: IN A CONSTITUTIONAL INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM, PREJUDICE IS PRESUMED WHERE AN ATTORNEY ADVISES AN ACCUSED TO CONFESS DURING THE EARLY STAGES OF A FELONY MURDER/ROBBERY INVESTIGATION BEFORE REVIEWING ALL DISCOVERY BASED ON THE REPRESENTATIONS WHICH THE ATTORNEY MISUNDERSTOOD AS TRUTHFUL OF A CO-DEFENDANT'S COUNSEL WITH WHOM HE HAD A PROFESSIONAL RELATIONSHIP
>
> POINT II: A REASONABLE PROBABILITY EXISTS THAT THE JUVENILE DEFENDANT WAS PREJUDICED BY HIS TRIAL ATTORNEY'S DEFICIENT PERFORMANCE WHERE, AGREEING TO MAKE A SELF-INCRIMINATING STATEMENT TO THE PROSECUTOR, HE RELIED ON THE ATTORNEY'S ADVICE WHICH WAS BASED ON THE INACCURATE REPRESENTATIONS OF A CO-DEFENDANT'S COUNSEL.
>
> POINT III: IN SUMMARY FASHION, DEFENDANT INCORPORATES THE REST OF HIS ARGUMENTS MADE TO THE PCR COURT.

Our prior decisions on direct appeal and the first PCR appeal set forth the facts revealed at trial, which we need not repeat here. State v. Salaam, No. A-2288-10 (App. Div. Aug. 2, 2013) (slip op. at 2-6); Salaam, No. A-3989-14 (slip

op. at 3-7). When defendant was charged with felony murder, his retained counsel "spoke to a co-defendant's attorney who suggested that the prosecutor would not offer a plea agreement to any defendant who had not given a statement." Salaam, No. A-2288-10 (slip op. at 5).

Defense counsel brought defendant to the Atlantic County Prosecutor's Office (ACPO), where he waived his Miranda[2] rights, and confessed to his involvement in the incident, but denied shooting the deceased victim. After this second statement, DNA results showed that the deceased victim's blood was on defendant's shirt.

The AG took over the prosecution from the ACPO when one of co-defendant's counsel became the Atlantic County Prosecutor. The AG offered defendant thirty years in prison with thirty years of parole ineligibility in exchange for a plea to felony murder, which defendant refused. The AG then reduced the exposure to twenty-five years in prison in exchange for a guilty plea to aggravated manslaughter. Defendant refused the more lenient offer.

Defendant requested that defense counsel move to suppress his second statement, but counsel declined because it was "the only thing that [got defendant] away from the felony murder." Defense counsel thought that because

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

defendant's second statement indicated the shooter had blood on his hand after the robbery, it could explain why the DNA test later revealed the deceased victim's blood on defendant's shirt.

Prior to the start of a second trial, defendant moved pro se to suppress his statement and discharge counsel. The court conducted a testimonial hearing, where defendant was represented by new counsel, after which it denied the motion to suppress the second statement. Defendant then pled guilty, preserving his right to appeal.

After our remand, the PCR testimonial hearing revealed the following facts. When defendant retained trial defense counsel to represent him on felony murder charges, counsel had been practicing law since 1993. Although his law practice was in Philadelphia, he had experience handling criminal cases, including at least three homicide trials, in Atlantic County. Counsel received discovery from the State, including police reports stating co-defendants had already identified defendant as one of the robbers armed with a gun. All other co-defendants had already given statements to law enforcement. McCrosson, Hart and Biggins gave statements implicating both Hudson and defendant. Hudson said they had arrived at the gas station "with guns," Biggins went inside the mini-mart and shot the victim, killing him, while defendant stayed outside

7

of the mini-mart. Biggins said he was never at the gas station, defendant and Hudson "came back to [his] house later and indicated that they had been involved in a robbery," and defendant had a weapon. Hart and McCrosson said they had "picked [the others] up and taken them to the gas station" but had "no idea what happened at the station." Police also had statements from individuals who heard defendant admit his involvement in the robbery. Police were in the process of examining defendant's clothing for DNA.

Counsel reached out to Hudson's counsel, an experienced criminal defense attorney who primarily handled cases in Atlantic County and was familiar with how the ACPO operated. This co-defendant, who unlike defendant, had given an initial incriminating statement, had also given a second statement to police without an agreement from the State on the advice of his attorney. Both lawyers believed their two clients' versions of events were consistent. Co-counsel said someone in defendant's position who cooperated with the police may face a prison sentence in the "high teens, low twenties." This estimate was based on the assumption that the two juveniles were providing truthful information and that defendant did not kill anyone.

According to a former Chief Assistant Prosecutor, who was a legal advisor to the ACPO's Major Crimes Unit at the time, the ACPO's practice was to make

8

no plea offers in the early stages of an investigation. If information was given, the ACPO would first seek to verify truthfulness by corroboration with physical evidence or witness statements. In her twenty-eight years of experience as a prosecutor, "plenty" of experienced criminal defense attorneys brought their clients in without plea offers in homicide cases "to give a statement believing that it would help their client in the long run." If truthful information was provided, the ACPO would make the defendant's early cooperation known to the judge at sentencing, and often the judge imposed a more lenient sentence than the maximum term offered by the ACPO.

Counsel met with defendant twice before the second statement. Counsel was aware defendant was a juvenile with no criminal record. His strategy was for defendant to give his version of the facts to police in the hopes of a favorable plea deal. If that did not resolve the case, counsel strategized that the statement would still be beneficial at trial because it would "get [defendant's] story . . . out there" without leaving him open to being "tripped up" with cross-examination. Counsel believed he could argue the victim's death was not "within the fair contemplation" of defendant because he was outside when the victim was shot in the mini-mart. Counsel discussed this strategy, as well as the evidence

9

already obtained by police, with defendant. He stressed the importance of defendant being truthful if he were to give a second statement.

The ACPO made no agreement before defendant gave his second statement. Counsel indicated to defendant his belief that he could receive a sentence in the nineteen to twenty year range for his truthful cooperation. Counsel testified that he did not indicate to defendant or his family that his belief was based on a discussion with a prosecutor. After counsel reviewed discovery and plea possibilities with defendant, defendant agreed with counsel's strategy.

Defendant's impression was that counsel would be able to secure a deal for a prison sentence of "no more than [twenty years], low teens," and that "the deal was firmed up" because counsel "wasn't using the words possibility anymore." Similarly, his mother testified: "[Counsel] told him it was a plea bargain, a plea on the table, and in order for him to get the plea, he had to give a statement."

A family friend testified that during a meeting with counsel before defendant's trial at which the friend, defendant's mother and defendant's father were present: "one of the questions I had . . . was why did the attorney have him go in and give an incriminating statement[,] and [counsel] said that there was a

A-2320-17T3

deal on the table." The State successfully objected to this testimony on hearsay grounds.

The PCR remand court found that defense counsel did not tell defendant that he would receive a specific plea offer in exchange for his second statement. The court found counsel and the former Chief Assistant Prosecutor credible, while he found defendant, defendant's mother, and the family friend not credible. The court concluded defendant failed to show counsel was ineffective under either the Strickland v. Washington, 466 U.S. 668, 687 (1984) or United States v. Cronic, 466 U.S. 648, 658-59 (1984) standards:

> The [c]ourt finds that [counsel] was faced with a young defendant who had no criminal history, yet was charged with felony murder. Even in the early stages the proofs against the [p]etitioner were overwhelming as the co-defendants had all incriminated the [p]etitioner as being a participant who had a gun. The prospect of DNA evidence was significant in the case. . . . [Counsel] reached out to co-counsel, found out that his client was already cooperating, and learned that the ACPO was interested in gathering more information about the shooting. Co-counsel . . . informed [counsel] that with cooperation he could negotiate a sentence of nineteen to twenty years.
>
> This information taken, together with [counsel's] strategy to gain favor with the ACPO, led [counsel], an experienced criminal defense attorney, to make the strategic decision to have his client cooperate with law enforcement in efforts to have a favorable plea offer extended at a later date. [Counsel] did not promise the

[p]etitioner a specific outcome for his cooperation or for providing a statement. This strategy, albeit one with a high risk/high reward potential, was not so likely to prejudice the accused that it is tantamount to a complete denial of counsel. . . .

[T]he [p]etitioner was not prejudiced by his statement. . . . Given the facts and strong evidence of the case, it would not have been sound trial strategy to argue that the [p]etitioner was not at the scene of the murder nor that he was uninvolved. The evidence of involvement in the robbery and gun possession was overwhelming. Moreover, [counsel's] strategy choices appeared to have some success for his client since the jury was unable to reach a verdict as to the felony murder charge.

"In reviewing a PCR court's factual findings based on live testimony, an appellate court applies a deferential standard; it 'will uphold the PCR court's findings that are supported by sufficient credible evidence in the record.'" State v. Pierre, 223 N.J. 560, 576 (2015) (quoting State v. Nash, 212 N.J. 518, 540 (2013)). A reviewing court will grant deference to the trial judge's firsthand assessment of witness credibility. Ibid. However, a PCR court's interpretation of the law is reviewed de novo. Ibid.

I.

Defendant argues this matter presents a case where prejudice should be presumed under Cronic because defense counsel "relied on the representation of a co-defendant's attorney to advise defendant to confess before discovery was

complete and without having any discussions with the prosecutor about securing some form of offer, a course he never before or has since recommended to a client." Moreover, defendant argues there was a conflict of interest because counsel's "prior professional relationship with [co-defendant]'s counsel compromised his undivided loyalty to defendant," and the resulting prejudice could have been avoided had counsel spoken to the prosecutor directly, citing State v. Cottle, 194 N.J. 449, 452 (2008) (holding a conflict existed where both the defendant and his defense counsel were under indictment in the same county and finding a presumption of prejudice where defense counsel failed to disclose the conflict).

Prejudice is presumed in limited circumstances. Cronic, 466 U.S. at 658-59.

> Most obvious, of course, is the complete denial of counsel. The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial. Similarly, if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable. No specific showing of prejudice was required in Davis v. Alaska, 415 U.S. 308[, 415] (1974), because the petitioner had been "denied the right of effective cross-examination" which "'would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.'"

[Ibid.]

Moreover, if a defendant knowingly "agreed in advance with defense counsel's trial strategy, then defense counsel's conduct was not plainly ineffective." State v. Castagna, 187 N.J. 293, 316 (2006).

The presumption of prejudice is not appropriate here because counsel advised defendant based on a strategy that, while risky, provided evidence separating defendant from the murder, and was calculated to result in a more favorable plea offer, which is not tantamount to "a complete denial of counsel." Cronic, 466 U.S. at 659. The PCR court made credibility findings regarding defense counsel's testimony, finding he advised defendant to give a second statement as part of a strategy to gain favor with the ACPO and the sentencing judge, and additionally found defendant agreed to the strategy. See Castagna, 187 N.J. at 316. No evidence of a conflict between defense counsel was presented. Defense counsel's reaching out to co-counsel does not present a conflict of interest; therefore the nondisclosure of that conversation does not give rise to a presumption of prejudice. See, e.g., Cottle, 194 N.J. at 452.

Consistent with the PCR remand court's findings in its comprehensive opinion, nothing suggests counsel's communication with co-defendant's counsel compromised defendant's best interests.

Defendant argues that even if we find no presumption of prejudice, counsel's conduct constitutes ineffective assistance of counsel under Strickland and State v. Fritz, 105 N.J. 42, 52 (1987), because he "advised defendant to confess without first securing some form of protection," and the "resulting prejudice of the introduction of a confession at trial" was "the lynchpin of the State's success in securing a conviction and later a guilty plea." Defendant emphasizes counsel developed a strategy without "full knowledge of the facts" because the DNA result was not yet known.

To establish ineffective assistance of counsel, a defendant must show (1) counsel's performance was so deficient that he or she was "not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) prejudice to the defense. Strickland, 466 U.S. at 687; see also Fritz, 105 N.J. at 52. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 689).

Regarding the first prong, the court must "fairly assess the reasonableness of an attorney's performance by 'eliminat[ing] distorting effects of hindsight, . . . reconstruct[ing] the circumstances of counsel's challenged conduct, and

. . . evaluat[ing] the conduct from counsel's perspective at the time.'" State v. Petrozelli, 351 N.J. Super. 14, 22 (2002) (alterations in original) (quoting Strickland, 466 U.S. at 689).

Strategic mistakes are generally insufficient to warrant reversal "except in those rare instances where they are of such magnitude as to thwart the fundamental guarantee of [a] fair trial." Castagna, 187 N.J. at 314-15 (alteration in original) (quoting State v. Buonadonna, 122 N.J. 22, 42 (1991)). In Castagna, our Supreme Court determined defense counsel's opening statement in which he acknowledged his client's guilt of lesser-included offenses did not constitute ineffective assistance of counsel. Id. at 316.

The PCR court found credible counsel's testimony that he did not represent to defendant or his family that defendant would receive a specific plea offer in exchange for a statement. Defendant's second statement not only provided information to the State regarding a co-defendant's involvement in the incident, but also mitigated defendant's own involvement in the actual killing. Counsel's strategy to gain favor with the ACPO based on information gathered from an attorney experienced with that office, in order to negotiate a favorable plea deal, although risky, "falls within the wide range of reasonable professional assistance." Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 689).

16

Regarding the second prong, a defendant has the burden to prove "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 694). In the context of guilty pleas, the second prong is modified to require "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Defendant fails to prove that he was prejudiced by counsel's assistance because defendant does not demonstrate a reasonable probability that, but for counsel's advice, the result would have been different, nor does defendant offer an alternative strategy counsel could have pursued that would have had a reasonable probability of a more favorable outcome. Each co-defendant had provided statements placing defendant at the scene with a gun. Defendant's second statement allowed counsel to present a more favorable version of events to the jury without subjecting defendant to cross-examination. If counsel had not advised defendant to cooperate, the overwhelming evidence against defendant might well have led the jury to believe defendant was more closely connected to the murder than his second statement suggested. See Fritz, 105 N.J. at 52.

17

The PCR remand court observed: "[Counsel's] strategy choices appeared to have some success for his client since the jury was unable to reach a verdict as to the felony murder charge." See Castagna, 187 N.J. at 316 (noting defense counsel's high-risk strategy "[led] to a not guilty verdict of the most serious offense"). Defendant fails to show "a reasonable probability" that but for counsel's advice, defendant would not have pled guilty after the jury could not reach a verdict on all charges. Defendant's second statement may well have contributed to the jury's inability to convict defendant of felony murder.

### III.

In his third point on appeal, defendant first argues the PCR court erred by barring the friend's testimony that counsel said "there was a deal on the table." Evidence determinations rest "in the sound discretion of the trial court." State v. Willis, 225 N.J. 85, 96 (2016). "For a hearsay error to mandate reversal, '[t]he possibility [of an unjust verdict] must be real, one sufficient to raise a reasonable doubt as to whether the error led the [factfinder] to a result it otherwise might not have reached.'" State v. Hightower, 120 N.J. 378, 410 (1990) (alterations in original) (quoting State v. Bankston, 63 N.J. 263, 273 (1973)).

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the

matter asserted." N.J.R.E. 801(c). We do not view this testimony as hearsay, as the issue was whether the lawyer said the ACPO had made a plea offer, and not whether the State in fact made such an offer. The out of court statement was thus not proffered for "the truth of the matter asserted."

Defendant's mother and defendant both testified that counsel had told them a plea deal was on the table. The court did not find the testimony of defendant or his mother credible. The court found the friend's testimony overall "lacked credibility entirely." Thus, if his testimony concerning the attorney's representation had been admitted, it would not have affected the outcome of the hearing. The court found counsel's representation that he did not say he had secured a plea deal credible, a credibility finding properly within the trial court's discretion. The exclusion of the friend's testimony was harmless.

Second, defendant briefly states "the court-ordered consolidation of his PCR evidentiary hearing with his co-defendant's was prejudicial." Defendant did not raise this argument during the hearing, and does not provide argument or supporting case law on appeal. The PCR court's decision for a joint hearing was not improper. See State v. Weaver, 219 N.J. 131, 148 (2014) (holding that a joint proceeding is preferable in the interest of judicial economy and accuracy where two defendants are alleged to have participated in the same transaction).

Finally, defendant briefly states that he "continues to maintain that his trial attorney was constitutionally ineffective" by not moving to suppress defendant's second statement prior to trial. A suppression hearing was held after the trial and before defendant pled guilty, after which the court found the second statement admissible. Thus the failure to seek such a hearing before trial was of no moment. See State v. Love, 233 N.J. Super. 38, 45 (App. Div. 1989) (finding the first prong of Fritz was not met where it was "quite apparent . . . that a motion made by defense counsel on the theory now advanced on appeal had no real chance of success").

The State did not claim that defendant killed anyone during the robbery. A State investigator from the ballistics unit testified as an expert at the felony murder trial that the two guns recovered by police, which included the gun defendant admitted using, did not match the bullets that struck the deceased victim. Although defendant's ultimate sentence was considerably more severe than that of his co-defendants, Salaam, No. A-3989-14, slip op. at 11, defendant did not demonstrate that he received ineffective assistance of counsel.

Defendant's fellow juvenile co-defendant, Hudson, who did not proceed to trial, received a lengthier sentence than the other co-defendants: a sentence of twenty-five years in prison with eighty-five percent parole ineligibility.

Defendant was the only individual who chose to go to trial, and he received a sentence substantially longer than that of any of his co-defendants and significantly more severe than the twenty-five years offered by the State prior to trial. He is serving a sentence of forty years with thirty years of parole ineligibility. We nevertheless affirm because this seeming sentencing inequity is not attributable to ineffective assistance of counsel.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2320-17T3