796 A.2d 927 (2002)
351 N.J. Super. 14
STATE of New Jersey, Plaintiff-Respondent,
v.
Gerald PETROZELLI, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued April 17, 2002.
Decided May 14, 2002.
*928 Alan L. Zegas, Chatham, argued the cause for appellant (Mr. Zegas, attorney and on the brief; Sharon Bittner Kean, on the brief).
Frank Muroski, Deputy Attorney General, argued the cause for respondent (David Samson, Attorney General, attorney; Mr. Muroski, of counsel and on the brief).
Before Judges BAIME, FALL and AXELRAD.
The opinion of the court was delivered by BAIME, P.J.A.D.
Defendant appeals from a conviction for second degree theft by failure to make required disposition of property (N.J.S.A. 2C:20-9), and from the denial of his motion for a new trial. He asserts: (1) prejudicial evidence concerning his incarceration was improperly admitted, (2) the prosecutor exceeded the bounds of fair comment in his summation, (3) the trial court committed plain error in its instructions, (4) the questions propounded in the verdict sheet deprived him of a fair trial, (5) the jury's verdict was against the weight of the evidence, (6) the trial court ignored his impecuniosity in entering the restitution order, and (7) his motion for a new trial should have been granted because he was denied the effective assistance of counsel. We find no merit in defendant's claims of trial error or in his attack upon the restitution order. R. 2:11-3(e)(2). We nevertheless conclude that defendant presented a prima facie case of ineffective assistance of counsel and is thus entitled to an evidentiary hearing.

I.
Although this is a criminal case, it pertains generally to the prosecution's claim *929 that defendant breached a written agreement to convey residential property to his friend Raymond Waring and Raymond's then girlfriend Carol Collins. At the time of the alleged agreement, the property, located at 18 Pineview Avenue in Keansburg, was owned by defendant, his wife Linda Ann, and his mother Antoinette. According to Carol, it was orally agreed that Raymond would pay Antoinette $15,000. Antoinette would then convey her interest in the property to defendant, who would sell the house to Raymond. Carol testified that she and Raymond gave three checks to Antoinette totaling $15,000, who then deeded the property to defendant. All three checks contained notations indicating that they represented deposits toward the purchase of the property.
On June 22, 1985, defendant and Raymond entered into a written contract which provided that Raymond was to take possession of the property, assume mortgage payments, and pay taxes, utility and other maintenance expenses. Upon payment of the full mortgage balance, the property was to be deeded to Raymond. The agreement, which was drafted by Raymond's attorney and was notarized by a notary public, provided in pertinent part as follows:
WHEREAS, Petrozelli is the owner of certain premises known as Lot 819, Block 36, Keansburg, New Jersey; and
WHEREAS, Waring has and will rent said premises from Petrozelli; and
WHEREAS, Waring will be given the right to acquire the premises from Petrozelli upon terms and conditions set forth hereinafter;
NOW, THEREFORE, IT IS AGREED AS FOLLOWS:
1. Commencing from the time of the signing of this Agreement, Waring agrees to take possession of the premises known as Lot 819 Block 36, Keansburg and repair and make improvements as he deems fit in connection with the house. Waring accepts and takes the premises "as is" and there are no representations by Petrozelli as to the physical condition of the premises.
2. Petrozelli agrees that title to the premises will be conveyed to Waring or his assigns at any time during the term of this Agreement upon thirty (30) days written notice.
3. Petrozelli agrees that the sales price to Waring shall be equivalent to the monies necessary to pay off the loan and mortgage of Washington Savings Bank of Elizabeth, New Jersey or any successor thereto, Account # XX-XX-XXXXXX-X. Petrozelli agrees not to increase the loan or mortgage or encumber the premises in excess of monies due Washington Savings Bank of Elizabeth, New Jersey as per direct amortization schedule of said savings bank without the written consent of Waring.
4. Waring agrees that from the time of the signing of this Agreement, he will be responsible for all real estate taxes, maintenance, upkeep, all utility costs and any and all other expenses in connection with the premises as if he was an owner as of the time of the signing of this Agreement, including the mortgage payment to Washington Savings Bank of Elizabeth, New Jersey # XX-XX-XXXXXX-X.
5. Waring shall have the right to assign his rights to this Agreement at his sole discretion; provided, however, he will remain responsible for the terms and conditions of this Agreement and the assigns agree to be bound by the terms and conditions of this Agreement as if a party thereto.
6. This Agreement shall be for ten (10) years from the signing hereof with *930 an additional ten (10) year renewal option to Waring if he gives ninety (90) days notice of his intention to so renew prior to the expiration of the ten (10) year period. All closing costs shall be split between the parties.
7. Waring agrees to furnish receipts upon request from Petrozelli as to the payment of the real estate tax bills as they become due, and mortgage payments on the premises.
8. Waring agrees to comply with any municipal, State or Federal ordinances pertaining to the upkeep and/or maintenance of the premises.
Pursuant to the agreement, Raymond and Carol took immediate possession of the property later in the summer months. It is undisputed that over the next three years the two made substantial improvements to the house. However, in June 1988, Raymond and Carol purchased a new house. They were successful in renting the Pineview residence and continued to pay the mortgage, taxes and maintenance expenses.
In September 1988, Raymond and Carol were married. Raymond died three years later on January 7, 1991. According to Carol, defendant visited her several days after Raymond's death and again in 1992. It was agreed that Carol would assume Raymond's obligations under the 1985 written contract and that she would contact defendant's lawyer, Arthur Balsamo, when she paid off the full mortgage balance so that the deed could be transferred to her name. Carol testified that defendant never mentioned an additional $15,000 payment would have to be made as a condition to the anticipated conveyance.
Carol continued to make monthly mortgage payments and to pay taxes, utilities and other expenses. On March 10, 1993, Carol paid the full mortgage balance. She then made repeated efforts to contact defendant and Balsamo, but they did not return her calls. Carol ultimately retained an attorney, Michael Lettieri, who wrote to Balsamo requesting that the property be deeded to his client.
Balsamo responded that the agreement required an additional $15,000 payment as a condition to the contemplated transfer of title. In Balsamo's letter, the attorney recited earlier conversations in which Carol had allegedly acknowledged her obligation to make an additional $15,000 payment. Carol subsequently learned that defendant had sold the property to another for $15,000. At the time, the assessed value was $100,600.
Carol dismissed her attorney and retained another lawyer, John Moore. She gave Moore a check in the amount of $20,000. Of that amount, Moore was to pay an overdue legal fee of $5,000 and was to tender the remaining $15,000 to defendant. Carol told Moore that she did not "want to lose the [property] for fifteen thousand." However, Moore kept the $20,000 payment and was later disbarred. Carol then apprised the Monmouth County Prosecutor's Office of defendant's alleged defalcation.
On cross-examination, Carol acknowledged that she was not a signatory to the written contract between defendant and Raymond and was not present when it was signed. She testified further that the somewhat unusual agreement was designed to shelter the property from Raymond's then wife who had commenced divorce proceedings against him. Carol conceded that she was not fully aware of the terms of the agreement between defendant and Raymond.
The jury found defendant guilty on this evidence. Defendant then dismissed his trial attorney and retained current counsel, who filed a timely motion for a new *931 trial. Defendant asserted that trial counsel was ineffective because he failed to present five witnesses who would have confirmed the defense's claim that Carol defaulted on her obligation to make an additional $15,000 payment, which was a necessary condition precedent to the transfer of the property.
The accounts of the five witnesses were set forth in detailed affidavits. Defendant's former wife, Linda, and his sister, Madeline Colangelo, claimed that they were present, along with Raymond, at a family dinner during which the essential terms of the agreement were formulated. According to Madeline Colangelo's affidavit, Raymond was "separated from his first wife and was having ... financial problems." They asserted that Raymond "would give a $15,000 deposit to ... Antoinette," and "[i]n addition ... would pay [defendant and his wife] $15,000 when he had the money." Although not all members of defendant's family were "happy" about the agreement, they ultimately "accepted [the] decision." The witnesses noted that defendant and Raymond were extremely close friends, and there was, thus, no need to formalize all of the terms of the agreement. Defendant "had given his word and the transaction was done."
In another affidavit, Louis Picardo asserted that he prepared defendant's income tax returns. According to Picardo, defendant consulted him concerning the "potential tax ramifications of the sale" of the Pineview residence. He asserted that an initial payment of $15,000 was to be made to Antoinette in return for her interest in the property and that an additional payment of $15,000 was to be made to defendant. Raymond was to pay off the mortgage balance, and the property was then to be conveyed to him.
In his affidavit, John Aramini claimed that he met Carol at Raymond's funeral, and the two discussed the terms of the agreement. Carol acknowledged that she was to make an additional $15,000 payment to defendant and was to pay off the mortgage balance, at which time the property was to be deeded to her. Arthur Balsamo, who it will be recalled represented defendant when Carol first asserted her entitlement to the property, confirmed Aramini's account. According to Balsamo, Carol repeatedly acknowledged that she was to make an additional $15,000 payment to defendant and was to pay off the mortgage, as a condition to the anticipated conveyance.
In his oral opinion denying defendant's motion for a new trial, the judge found: (1) trial counsel's failure to call the affiants as witnesses was a strategic decision immune from second-guessing, and (2) while he "ha[d] no way of judging how much credibility the [j]ury would have given [to the witnesses had they appeared and testified] there [was] no reasonable probability that the verdict would have been any different."
It is against this factual backdrop that we consider defendant's claim of ineffective assistance of counsel. The applicable principles are well settled.
"To establish a prima facie case of ineffective assistance of counsel, a defendant must demonstrate the reasonable likelihood of succeeding under the test set forth in Strickland v. Washington," 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984), which New Jersey adopted in State v. Fritz, 105 N.J. 42, 58, 519 A.2d 336 (1987). Under the Strickland-Fritz test, defendant must prove the following two-prongs:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.

*932 Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
When applying the first prong, the court must give great deference to counsel's performance and must strongly presume that the attorney's conduct constituted reasonable professional assistance. Strickland v. Washington, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. Further, "[a] convicted defendant making a claim of ineffective assistance of counsel must identify the acts or omissions ... that are alleged not to have been the result of reasonable professional judgment." Id. at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. The court must then fairly assess the reasonableness of an attorney's performance by "eliminat[ing] distorting effects of hindsight,... reconstruct[ing] the circumstances of counsel's challenged conduct, and ... evaluat[ing] the conduct from counsel's perspective at the time." Id. at 689, 104 S.Ct. at 2065-66, 80 L.Ed.2d at 694. The court "must determine, whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. Counsel's "strategic choices made after a thorough investigation of [relevant] law and facts ... are virtually unchallengeable." Id. at 690-91, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. In contrast, strategic choices made after a limited investigation are assessed for reasonableness, with great deference given to counsel's professional judgments. Ibid.
Even if the court finds that counsel erred, defendant's right to effective assistance is not violated unless the attorney's error was "prejudicial to the defense." Id. at 692, 104 S.Ct. at 2067, 80 L.Ed.2d at 696. The proper test for prejudice is:
[T]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.
Id. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. In deciding whether the required prejudice has been shown, a reviewing court "should presume ... that the judge or jury acted according to law." Id. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.
Ineffective assistance of counsel claims are often predicated on "allegations and evidence that lie outside the trial record." State v. Russo, 333 N.J.Super. 119, 138, 754 A.2d 623 (App.Div.2000) (citing State v. Preciose, 129 N.J. 451, 460, 609 A.2d 1280 (1992)). We have said that in order to be entitled to an evidentiary hearing, a defendant "must do more than make bald assertions that he was denied the effective assistance of counsel." State v. Cummings, 321 N.J.Super. 154, 170, 728 A.2d 307 (App.Div.), certif. denied, 162 N.J. 199, 743 A.2d 852 (1999). "He must allege facts sufficient to demonstrate counsel's alleged substandard performance" and the probability that it affected the jury's verdict. Ibid. Where, as here, the defendant asserts that his attorney failed to call witnesses who would have exculpated him, he must assert the facts that would have been revealed, "supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." Ibid. While a defendant is obliged to establish the right to relief by a preponderance of the credible evidence, State v. Preciose, 129 N.J. at 459, 609 A.2d 1280, the court must consider his "contentions indulgently and view the facts asserted by him in the light *933 most favorable to him," State v. Cummings, 321 N.J.Super. at 170, 728 A.2d 307.
In reviewing a trial judge's decision, we give deference to his feel for the case because he had the opportunity to observe and hear the witnesses as they testified. Carrino v. Novotny, 78 N.J. 355, 360, 396 A.2d 561 (1979). This much conceded, we recently held in State v. Russo, 333 N.J.Super. 119, 754 A.2d 623 (App.Div. 2000), that "in a motion for [a] new trial, the question as to whether the result of the proceeding would have been different [had exculpatory witnesses been called] is a mixed question of law and fact." Id. at 140, 754 A.2d 623. We said that "if a prima facie showing of ineffective assistance of counsel has been made, even a judge who has conducted a bench trial may not assume that the proffered evidence does not create a reasonable probability that the result of the proceeding would have been different." Ibid. We added that "[t]he judge can only make that determination after conducting the necessary evidentiary hearing, hearing the evidence, and then making a qualitative judgment as to whether that evidence, after being subjected to cross-examination, is sufficient to engender a reasonable probability that the result of the proceeding would have been different, or that the evidence presented at the hearing was sufficient to undermine confidence in the outcome of the initial trial." Ibid.
Russo involved a bench trial. This case thus presents an added complexity, i.e., a judgment as to how the jury might have reacted had the exculpatory witnesses appeared before it. We are convinced that the trial court erred by its summary devaluation of the affiants' credibility. While it is true that the affiants were either friends, associates, or relatives of defendant, their accounts provided a plausible version of the transaction and its aftermath that should not have been so lightly dismissed.
We add that while some of the proffered testimony may include inadmissible hearsay, the competency of the evidence can best be resolved at the remand hearing. We note, however, that we are wholly unpersuaded by the State's blanket claim that the parol evidence rule bars admission of testimony concerning terms at variance with the 1985 written contract. The prosecutor's insistence that the evidence is barred by the parol evidence rule misconceives the essential function of that principle and further "blur[s] the distinctions between civil and criminal proceedings." State v. Damiano, 322 N.J.Super. 22, 54, 730 A.2d 376 (1999), certif. denied, 163 N.J. 396, 749 A.2d 369 (2000). It is perfectly obvious that the parol evidence rule is entirely inappropriate here. Ibid. Beyond this, even if the rule were to be applied in the criminal sphere, it would not preclude admission of the proffered evidence. The sketchy 1985 written contract was clearly not intended to serve as an integrated agreement embracing all of the promises and obligations of the parties.
We thus conclude that defendant is entitled to an evidentiary hearing on his claim of ineffective assistance of counsel. The affiants should be permitted to testify at the remand proceedings. They should be subject to cross-examination. The parties should further explore the reason or reasons why the affiants were not called as witnesses. If the proffered testimony generates a reasonable probability that the result of the proceedings would have been different had the exculpatory witnesses been presented and that trial counsel was ineffective, a new trial must be granted.
The order denying defendant's motion for a new trial is reversed and the matter is remanded for proceedings consistent *934 with this opinion. The remanded proceedings should be completed on or before sixty days from the date of the filing of this opinion. We retain jurisdiction.