**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3126-17T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RAYMOND E. TROXELL,

     Defendant-Appellant.

_____

          Submitted December 2, 2019 – Decided March 2, 2020

          Before Judges Messano and Susswein.

          On appeal from the State of New Jersey, Law Division, Middlesex County, Indictment No. 09-02-0348.

          Joseph E. Krakora, Public Defender, attorney for appellant (Steven M. Gilson, Designated Counsel, on the brief).

          Christopher L.C. Kuberiet, Acting Middlesex County Prosecutor, attorney for respondent (Joie D. Piderit, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

          Appellant filed a pro se supplemental brief.

PER CURIAM

A jury convicted defendant Raymond Troxell of the first-degree murder of his business partner, Vincent Russo, and answered two specific interrogatories that compelled the imposition of a life sentence without parole pursuant to N.J.S.A. 2C:11-3(b)(4). State v. Troxell, 434 N.J. Super. 502, 504 (App. Div. 2014). The Supreme Court denied defendant's petition for certification. 221 N.J. 285 (2014).

We summarized most of the salient evidence at trial in our prior opinion. Id. at 505–08. A key State's witness was John Kissel, defendant's long-time friend to whom defendant offered $3000 to kill Russo. Id. at 506. Kissel's testimony critically tied defendant to co-defendant, Frank Marsh, who the State alleged defendant paid to ultimately execute the murder. Id. at 506–07.[1]

Defendant filed a pro se petition for post-conviction relief (PCR) alleging ineffective assistance of trial counsel (IAC) and asserting six specific failings that demonstrated deficient performance. Defendant contended that trial counsel failed to investigate the State's evidence regarding Marsh's involvement, failed to call Marsh as a witness, failed to call an expert to challenge the State's

---

[1] Marsh was tried separately, convicted, and sentenced to a mandatory life sentence without parole. State v. Marsh, No. A-6279-10 (App. Div. Oct. 16, 2014) (slip op. at 2).

evidence of Marsh's involvement, failed to call "material witnesses favorable to the defense," failed to adequately cross-examine the State's witnesses and failed to investigate and call an expert regarding "Marsh's cell phone activity around the time of the crime."

After the appointment of PCR counsel and with his assistance, defendant filed a supplemental certification expounding on the IAC claims. In large part, these were criticisms of trial counsel's failure to call allegedly exculpatory witnesses at trial, although the appellate record fails to include any certifications or affidavits from these purported exculpatory witnesses. Additionally, defendant criticized trial counsel's failure to challenge the State's contention that defendant withdrew a large sum of money from the business's bank account to pay Marsh. Defendant certified that he gave trial counsel a bank check issued the same day as the withdrawal and made payable to the landlord who owned the business premises.

In a written opinion, the PCR judge, who was not the trial judge, synthesized defendant's IAC assertions into two categories. First, that trial counsel failed to investigate defendant's "prescription drug use and lack of sleep" contemporaneous to multiple statements defendant provided to police during their investigation. See id. at 508. The PCR judge concluded defendant

3

failed to establish a prima facie case warranting an evidentiary hearing as to this claim.

Defendant's second claim was that trial counsel failed to use "available evidence that important portions of . . . Kissel's testimony were false." The "available evidence" included Marsh's cell phone records, which were produced at trial. These records demonstrated calls Marsh made contradicted Kissel's testimony about the timing of certain events, including a meeting at defendant's house, where defendant, Kissel and Marsh were present, and Kissel saw defendant with a large "wad" of cash. Although trial counsel's cross-examination of Kissel was quite vigorous, he never confronted Kissel with Marsh's phone records. The PCR judge granted defendant an evidentiary hearing "for the limited purpose of exploring trial counsel's decision to cross-examine . . . Kissel without utilizing cell phone records to contradict the veracity of his testimony."[2]

---

[2] The judge did not address any of the other claims made in the certifications supporting the PCR petition. We have not been provided with a copy of defendant's PCR brief, and, the transcript of oral argument reveals that PCR counsel focused on the two contentions cited by the judge, and mentioned, in passing, defendant's claim regarding the bank check.

A-3126-17T3

A second PCR judge conducted an evidentiary hearing at which defendant's trial counsel was the sole witness.[3] In his written statement of reasons, the judge recounted trial counsel's testimony, which he found credible, and noted that although counsel was aware of the cell phone records, he "deliberately chose not to cross-examine . . . Kissel . . . because he did not want to give . . . Kissel an opportunity to rehabilitate himself." Instead, trial counsel used the cell phone records during summation "to discredit . . . Kissel's testimony." The judge found trial counsel made a "reasonable strategic decision[]" not to cross-examine Kissel with the cell phone records. The judge concluded trial counsel's performance was not deficient and denied defendant's PCR petition.

Before us, defendant raises the following argument:

> POINT I
>
> DEFENDANT'S CONVICTIONS MUST BE REVERSED BECAUSE TRIAL COUNSEL WAS

---

[3] Defendant proffered an expert's report from Patrick Cronin regarding cell tower tracking. We have not been furnished with a copy of the report. The State objected, arguing the sole issue to be resolved at the hearing was trial counsel's decision not to use the cell phone records during cross-examination of Kissel. The judge sustained the State's objection, holding that the subject was not a valid area for expert testimony. Defendant has not challenged the exclusion of Cronin's testimony on appeal.

INEFFECTIVE FOR NOT CROSS-EXAMINING THE STATE'S PRINCIPAL WITNESS WITHOUT UTILIZING THE CELL[]PHONE RECORDS TO IMPUGN HIS VERACITY.

Defendant raises the following points in a pro se supplemental brief:

POINT I

THE PCR COURT ERRED IN DENYING DEFENDANT'S PCR PETITION AS THE EVIDENCE ADDUCED AT THE EVIDENTIARY HEARING DEMONSTRATED THE STATE USED FALSE EVIDENCE TO OBTAIN DEFENDANT'S CONVICTION IN VIOLATION OF HIS FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS AND A FAIR TRIAL.

POINT II

THE PCR COURT ERRED IN DENYING DEFENDANT'S PCR PETITION AS THE EVIDENCE ADDUCED AT THE EVIDENTIARY HEARING DEMONSTRATED THE STATE COMMITTED A BRADY[4] VIOLATION WHEN IT FAILED TO TURN OVER TO DEFENSE MATERIAL EVIDENCE FAVORABLE TO THE DEFENDANT.

POINT III

THE PCR COURT ERRED IN FINDING THAT TRIAL COUNSEL EXERCISED REASONABLE TRIAL STRATEGY AS COUNSEL CANNOT ACQUIESCE TO A VIOLATION OF DEFENANT'S RIGHT TO DUE PROCESS RIGHT AND A FAIR TRIAL.

---

4 Brady v. Maryland, 373 U.S. 83 (1963).

POINT IV

THE PCR COURT ERRED IN DENYING
DEFENDANT'S PETITION WHEN IT FAILED TO
RECOGNIZE[] THE STATE'S BLATANT AND
CONTINUAL MISCONDUCT WHICH VIOLATED
DEFENDANT'S FOURTEENTH AMENDMENT
RIGHT TO DUE PROCESS AND A FAIR TRIAL.

POINT V

THE PCR COURT ERRED IN DENYING
DEFENDANT'S PETITION WHEN IT REFUSED TO
CONSIDER DEFEDANT'S OTHER CLAIMS
THEREBY DENYING HIM DUE PROCESS AND A
FAIR HEARING.[5]

POINT VI

THE PCR COURT ERRED WHEN IT REFUSED TO
CONSIDER THE MERITS OF DEFENDANT'S
CLAIM THAT HE IS ACTUALLY INNOCENT, AND
THE CONVICTION IS AGAINST THE WEIGHT OF
THE EVIDENCE, WHICH VIOLATED HIS RIGHT
TO EFFECTIVE ASSISTANCE OF COUNSEL AND
DUE PROCESS AS AFFORDED HIM BY THE
SIXTH AND FOURTEENTH AMENDMENTS TO
THE UNITED STATES CONSTITUTION AND
ARTICLE [1], PARAGRAPH 10 OF THE NEW
JERSEY CONSTITUTION.

Having considered these arguments in light of the record and applicable legal

standards, we affirm.

---

[5] We have omitted the subpoints in Points V and VI.

I.

To establish an IAC claim, a defendant must satisfy the two-prong test formulated in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987). First, he must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Id. at 52 (quoting Strickland, 466 U.S. at 687). Second, a defendant must show by a "reasonable probability" that the deficient performance affected the outcome. Fritz, 105 N.J. at 58. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." State v. Pierre, 223 N.J. 560, 583 (2015) (quoting Strickland, 466 U.S. at 694; Fritz, 105 N.J. at 52).

Importantly, "[o]ur standard of review is necessarily deferential to a PCR court's factual findings . . . that are supported by sufficient credible evidence in the record." State v. Nash, 212 N.J. 518, 540 (2013) (citing State v. Harris, 181 N.J. 391, 415 (2004)). We review de novo, however, the trial court's application of those facts to the legal principles involved. Harris, 181 N.J. at 416.

In assessing defendant's claim, we "give great deference to counsel's performance and must strongly presume that the attorney's conduct constituted reasonable professional assistance[,]" State v. Petrozelli, 351 N.J. Super. 14,

21–22 (App. Div. 2002), remaining wary in order to "avoid viewing the performance under the 'distorting effects of hindsight.'" State v. Norman, 151 N.J. 5, 37 (1997) (quoting Strickland, 466 U.S. at 689). "The quality of counsel's performance cannot be fairly assessed by focusing on a handful of issues while ignoring the totality of counsel's performance in the context of the State's evidence of [a] defendant's guilt." State v. Castagna, 187 N.J. 293, 314 (2006) (citing State v. Marshall, 123 N.J. 1, 165 (1991)).

In this case, the PCR judge had the opportunity to hear and see trial counsel's testimony, which he judged credible. He accepted counsel's explanation why he did not confront Kissel with the phone records during cross-examination, choosing, instead, to deliver a blow to Kissel's credibility on summation, when the witness would be unable to explain away inconsistencies.

Moreover, as trial counsel explained, the divergence between Kissel's timeline and contrary implications from the phone records was not critical to the overall defense strategy. After all, in his statement to police, defendant admitted offering money to Marsh to kill Russo, but he claimed the offer was in jest and he never thought Marsh would go through with the murder. Defendant admitted giving money to Kissel to give to Marsh but claimed he did so out of fear after finding out Marsh actually had killed Russo.

Kissel's testimony about seeing Marsh at defendant's home and what transpired on the evening of the murder was undoubtedly important. However, trial counsel was able to establish through the State's investigator that Marsh's phone was using certain cell towers at various times, and that it was unlikely Marsh could have been at defendant's home when Kissel claimed he was. Trial counsel drove the point home in summation. The tactic was effective, because, in summation, the prosecutor acknowledged that defendant's version of the timing of the evening's events made "more sense" than Kissel's based on the location information in Marsh's phone records. The prosecutor nonetheless urged the jury to believe Kissel's version based on other evidence in the record.

Generally, "strategic miscalculations or trial mistakes are insufficient to warrant reversal 'except in those rare instances where they are of such magnitude as to thwart the fundamental guarantee of [a] fair trial.'" Castagna, 187 N.J. at 315 (alteration in original) (quoting State v. Buonadonna, 122 N.J. 22, 42 (1991)). Counsel's "strategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" Strickland, 466 U.S. at 690. We reject defendant's claim that trial counsel rendered deficient performance because he failed to cross-examine Kissel with the cell phone records.

A-3126-17T3

II.

We are unpersuaded by any of the points defendant raises in his pro se supplemental brief, some of which were never raised before, either on direct appeal or before the PCR judges.

The arguments defendant raises in Points I, III and IV of his supplemental brief require some explication. During colloquy at the PCR evidentiary hearing, but before trial counsel testified, the assistant prosecutor, who was not the trial prosecutor, presented a timeline for the sequence of events on the evening of the murder that was contrary to that argued by the prosecutor at trial. She acknowledged that Kissel's trial testimony was inconsistent with the cell phone records, but that the information "was all presented to the jury."

Defendant contends the State solicited false information at trial, because the trial prosecutor knew Kissel's version of events was false. He asserts that the judge erred in finding trial counsel made a reasonable strategic decision in not using the phone records to cross-examine Kissel, because the Rules of Professional Conduct (RPC) and other professional standards prohibit an attorney from offering evidence he knows is false. Defendant also argues that the State's shifting assertions about the timeline of critical events amounts to

misconduct, and that any version of events other than those proposed by the State at trial is barred by the doctrine of judicial estoppel.

None of these contentions were specifically raised before either PCR judge. See State v. Witt, 223 N.J. 409, 419 (2015) ("[W]ith few exceptions, 'our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available.'" (quoting State v. Robinson, 200 N.J. 1, 20 (2009))). Nevertheless, as already noted, inconsistencies between the phone records and Kissel's testimony were laid bare for the jury, and the prosecutor acknowledged those inconsistencies. Kissel himself testified that he generally was "not that sure about the times," and admitted that he had memory problems that affected his recall. There is no evidence that the prosecutor solicited false testimony. Moreover, there is no evidence that trial counsel violated any RPC, or testified falsely at the PCR hearing, as defendant also claims. The PCR prosecutor's mistaken recollection of the trial record is not the equivalent of misconduct, nor did the PCR judge rely on her misstatements in deciding whether trial counsel provided ineffective assistance. Defendant's assertion that judicial estoppel applies and should result in reversal of his conviction lacks sufficient merit to warrant discussion. R. 2:11-3(e)(2).

In Point II, defendant argues the State committed a Brady violation because before trial it did not provide underlying phone subscriber information contained on spreadsheets that the State's investigator prepared for presentation during his testimony. The issue was never raised before the PCR judge, nor was it raised on direct appeal. See R. 3:22-4(a) (barring claims that could have been raised on direct appeal but were not). Nonetheless, the trial record is clear. Defense counsel had all the information, albeit not organized in the same format as the spreadsheets the investigator prepared for his testimony. Following counsel's objection, the trial judge ordered the State to provide copies of the spreadsheets before permitting the State to use the exhibits at trial. The argument merits no further discussion. R. 2:11-3(e)(2).

In Point V, defendant contends the PCR court erred by limiting the evidentiary hearing to a single issue and by failing to address other points raised in the petition. However, other than reiterating the judicial estoppel argument, the only argument defendant briefs on this point is the claim that trial counsel provided ineffective assistance because he failed to introduce evidence that monies withdrawn from the business's account were used to pay rent, not to pay Marsh.

We have already acknowledged that PCR counsel referenced the issue during oral argument before the first PCR judge, and the judge never addressed the issue in his written decision. While we do not condone the oversight, our own review of the record leads us to conclude that the judge did not mistakenly exercise his discretion in denying any evidentiary hearing on the issue and impliedly rejecting defendant's IAC claim in this regard.

We review denial of an evidentiary hearing for an abuse of discretion. State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013). A defendant is only entitled to an evidentiary hearing on an IAC claim if he makes a prima facie showing demonstrating a reasonable likelihood of success under both prongs of the Strickland/Fritz test. R. 3:22-10(b).

In his certification, defendant alleged that trial counsel "failed to present substantial evidence relating to financial transactions" surrounding defendant's withdrawal of cash from the business account. Defendant stated that he provided trial counsel with a copy of a bank check and deposit stamp showing his landlord deposited the check for $2350 into his account one week before Russo's murder. The check is in the appellate record, but there is no indication that it was produced at trial.

Even though the first PCR judge ordered an evidentiary hearing limited to trial counsel's decision regarding Marsh's phone records, during the hearing defendant's PCR counsel questioned trial counsel about the check. Trial counsel said he had no recollection of it. Defendant did not testify at the PCR hearing, so his IAC claim rests solely on his certification. Assuming arguendo that defendant provided trial counsel with a copy of the deposited bank check, his failure to introduce the check in evidence at trial, even if deficient, does not satisfy the second prong of the Strickland/Fritz test.

The record clearly established that trial counsel rebutted the State's theory that defendant's withdrawal was used to pay Marsh. While cross-examining the prosecutor's investigator, trial counsel solicited testimony that the $2350 withdrawn from the business account in December 2008 was the same amount as a canceled check that defendant had paid the business's landlord in November. Counsel reiterated the point in summation, arguing that the withdrawal was a rent payment. In his summation, the trial prosecutor conceded that the amount withdrawn "seemed to coincide with the rent payment," adding that the jury "could have a reasonable doubt" about whether defendant had used the withdrawn cash to pay Marsh.

Even if trial counsel's failure to introduce the check demonstrated deficient performance, defendant failed to prove there was a "reasonable probability" that the deficient performance affected the outcome. Fritz, 105 N.J. at 58. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Pierre, 223 N.J. at 583 (quoting Strickland, 466 U.S. at 694; Fritz, 105 N.J. at 52.). Defendant failed to make a prima facie case of ineffective assistance on this issue.

To the extent we have failed to specifically address defendant's remaining arguments, including those raised in Point VI, they are either procedurally barred by Rule 3:22-4(a), or lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3126-17T3