**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3275-18T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DAWUD S. GREENE a/k/a
JUSTICE GREENE,

    Defendant-Appellant.

_____

Submitted April 20, 2020 – Decided May 14, 2020

Before Judges Sabatino and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 11-09-1622.

Joseph E. Krakora, Public Defender, attorney for appellant (Angela Costigan, Designated Counsel, on the brief).

Christopher J. Gramiccioni, Monmouth County Prosecutor, attorney for respondent (Lisa Sarnoff Gochman, of counsel and on the brief).

PER CURIAM

Defendant Dawud Greene appeals from a Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

I.

On September 6, 2011, defendant was charged with second-degree unlawful possession of a weapon, contrary to N.J.S.A. 2C:39-5(b), and second-degree possession of a weapon by certain persons not to have weapons, contrary to N.J.S.A. 2C:39-7(b)(1). After a jury trial, defendant was convicted of the "certain persons" weapons possession offense. The trial court sentenced defendant to an extended term of fifteen years, with a parole ineligibility period of seven and one-half years pursuant to the No Early Release Act, N.J.S.A. 2C:43-7.2.

The State's proofs at trial established that on May 11, 2011, the police confiscated a gun from a Yukon SUV. The vehicle had been parked in Asbury Park in front of the apartment complex of S.B.[1] S.B. contacted the Asbury Park Police Department and reported that she had seen defendant that morning running toward the vehicle and placing a black object that appeared to be a

_____

[1] As we did in our unpublished opinion affirming defendant's conviction and sentence, we use initials for the individuals who came forward and reported the offense to the police and for the other third parties mentioned in this opinion.

handgun under the rear passenger seat. She also reported that she overheard defendant saying that he was going to kill three people and that he attempted to shoot another individual the previous night, but his gun malfunctioned.

After receiving this information from S.B., the police located the vehicle parked on the street. They tracked down the registered owner of the vehicle, A.W., who is the long-time girlfriend of defendant's father. The owner went down to the police station and signed and initialed a consent-to-search form. The police then found a nine-millimeter handgun under the rear passenger seat, consistent with S.B.'s report.

At the ensuing trial, S.B. was the key witness for the State. She essentially repeated the facts that she had relayed to the police. In sum, she stated that she observed defendant placing a gun inside of his father's girlfriend's car presumably to conceal the weapon because of the shooting incident the night before. There were some minor variations, however, in the details she described at trial compared with her earlier statement to the police, including whether she saw the defendant while she was outside or indoors, and whether he was running, as well as a few other matters.

Defendant did not testify at trial and his sole witness was a defense investigator who had taken photographs and measurements at the location of the

crime scene. In his summation, defense counsel argued that S.B. was not a credible witness and that the police had not conducted an adequate investigation. He further argued that the fact that defendant had driven the vehicle in the past did not mean that he had been driving it on or about the day that the gun was confiscated from it.

Defendant appealed and we affirmed his conviction and sentence in an unpublished opinion. See State v. Greene, A-0031-13 (App. Div. April 11, 2016). The Supreme Court denied certification. State v. Greene, 227 N.J. 108 (2016).

Defendant filed a pro se PCR petition, and an amended verified petition by appointed counsel, claiming he was denied effective assistance of counsel. Specifically, defendant argued that his trial counsel was ineffective because he "was greatly prejudiced . . . as a result of [his] trial counsel's failure to prepare for trial [as] witnesses who would have exonerated [him] were not presented to the jury." He further contended his counsel coerced him not to testify when he informed defendant that "he had an [eighty-five] percent chance of acquittal should he not testify" and that "it was a certainty that he would be convicted had he testified." Defendant then maintained that "the cumulative effect of all the errors was to completely deprive [him] of a fair and impartial trial."

4

Defendant also argued that he was denied effective assistance of his appellate counsel. Defendant maintained that his appellate counsel failed to raise the aforementioned claims regarding ineffective assistance of trial counsel on direct appeal. Defendant also argued that he "fail[ed] to brief the trial court's [N.J.R.E.] 404(b) ruling permitting [S.B.] to testify that 'defendant was going to kill [three] people before going to jail.'"

Defendant further contended that a security camera video presented at trial "was intentionally incomplete so as to enhance the State's case and diminish [his] opportunity for acquittal." In this regard, defendant maintained that a complete video "would have shown that defendant did not park the car in front of 1266 Washington Avenue and did not place a gun in the vehicle[,]" and it "would demonstrate that . . . defendant did not even drive the vehicle down Washington Avenue." He also alleged that his counsel was ineffective for "failing to object to the video until there was time to conduct an investigation."

Judge Dennis R. O'Brien denied defendant's PCR petition and his request for an evidentiary hearing in an October 26, 2018 order. In his accompanying oral decision, Judge O'Brien first noted that defendant "does not cite to any specific instances of examples of [his] trial [c]ounsel's failure to conduct a pretrial investigation." He emphasized that defendant's first trial counsel

"engaged the services of a defense investigator who conducted interviews with two potential witnesses, defendant's [father's girlfriend], [A.W.], and [Q.W., an unrelated resident of Neptune]." Judge O'Brien further stated that defendant's second trial counsel "immediately interviewed two additional witness[es], [Z.S.] and [L.H.], and surveyed the crime scene." He concluded that defendant failed to establish a prima facie case because defendant failed to cite any examples of failure to investigate "when trial counsel did, in fact, investigate."

With respect to defendant's argument that his trial counsel failed to call witnesses, Judge O'Brien indicated that defendant "has not identified any witnesses that would have exonerated him at trial, nor did he provide affidavits or certifications based on their personal knowledge." As to whether defendant's trial counsel should have called L.H., the mother of defendant's child, as a defense witness, he agreed with the State's arguments that defendant merely provided an "unsworn statement [that] does not include an oath or affirmation[,]" that L.H. "was the mother of . . . defendant['s child] which provided fertile ground for impeachment based on bias[,]" she had "a powerful financial interest in securing . . . defendant's acquittal and release[,]" and that her "statement to the investigator contradicted not only [S.B.'s] sworn statement under oath, but also her own statement given later on to that investigator." Judge

O'Brien concluded that defendant's trial counsel was not ineffective for failing to call L.H. "because of her substantial risk of impeachment due to bias, as well as her unreliability."

Judge O'Brien also rejected defendant's argument that his trial counsel should have objected when the State presented only still photographs taken from security camera footage recorded sometime after the incident occurred, as the complete video would have refuted S.B.'s testimony and he would have been acquitted. Judge O'Brien explained that there was "nothing in a sworn affidavit or certification from . . . defendant or anyone else with personal knowledge of that allegation . . . [a]nd the trial record disputes and refutes that allegation." He acknowledged that there was surveillance video from another unrelated incident, "but that did not show anything that would have helped to exonerate . . . defendant in any way." Judge O'Brien concluded that any errors with respect to failing to object until defendant could obtain the complete security video would be harmless as the security camera would not have recorded the scene of the crime, and that if a video existed from the time of the crime, it would not have shown anything that "would have exonerated the defendant in any way shape or form."

Defendant filed this appeal, limiting his arguments to the following contentions:

POINT I

THE LOWER COURT ERRED IN FAILING TO FIND THAT DEFENSE COUNSEL WAS INEFFECTIVE.

A. DEFICIENCY PRONG.

1. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO CALL KEY WITNESSES IN DEFENSE.

2. TRIAL COUNSEL WAS NOT PREPARED FOR TRIAL.

3. TRIAL COUNSEL FAILED TO OBJECT TO THE VIDEO OF THE SITE PLACED INTO EVIDENCE BY THE STATE AND ELICITED TESTIMONY FROM DEFENSE WITNESS SULLIVAN WHICH OPENED THE DOOR TO A REBUTTAL FROM THE STATE.

B. PREJUDICE PRONG

POINT II

THE LOWER COURT ERRED IN FAILING TO HOLD AN EVIDENTIARY HEARING.

Having considered defendant's arguments in light of the record and applicable legal standards, we affirm substantially for the reasons set forth by Judge O'Brien in his oral decision. We add the following comments.

II.

We typically review a PCR petition with "deference to the trial court's factual findings . . . 'when supported by adequate, substantial and credible evidence.'" State v. Harris, 181 N.J. 391, 415 (2004) (alteration in original) (quoting Toll Bros., Inc. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002)). However, where, as here, "no evidentiary hearing has been held, we 'may exercise de novo review over the factual inferences drawn from the documentary record by the [PCR judge].'" State v. Reevey, 417 N.J. Super. 134, 146-47 (App. Div. 2010) (alteration in original) (quoting Harris, 181 N.J. at 421). We also review de novo the legal conclusions of the PCR judge. Harris, 181 N.J. at 415-16.

With respect to claims of ineffective assistance of counsel, a defendant must prove counsel was ineffective by a preponderance of the evidence. State v. Gaitan, 209 N.J. 339, 350 (2012). A defendant must prove counsel's handling of the matter "fell below an objective standard of reasonableness" and that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland v. Washington, 466 U.S. 668, 687-88 (1984); State v. Fritz, 105 N.J. 42, 58 (1987) (adopting the Strickland two-part test in New Jersey).

9

A defendant must also prove counsel's "deficient performance prejudiced the defense." Strickland, 466 U.S. at 687. Prejudice is established by showing a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Thus, a defendant must establish that counsel's performance was deficient, and the defendant suffered prejudice in order to obtain a reversal of the challenged conviction. Id. at 687; Fritz, 105 N.J. at 52.

## III.

In points I.A.1 and 2, defendant alleges that his trial counsel failed to call key witnesses in his defense and "made no effort to produce any evidence that would contradict [S.B.'s] testimony." It is significant to note that before the PCR court, defendant merely made only a general allegation that "witnesses who would have exonerated [him] were not presented to the jury." From what we can discern in the record, defendant presented only a report prepared by a defense investigator that was notarized and signed by L.H. to support this claim. On appeal, however, he has refined his argument to claim that his trial counsel's failure to call L.H., S.H. ("Sam"),[2] S.H. ("Sarah"), S.R., Q.W. and Z.S. as

---

[2] Intending no disrespect, we use pseudonyms for the two parties with the initials "S.H." in order to avoid confusion.

witnesses constituted ineffective assistance.  To support these claims, in addition to the report memorializing the defense investigator's interview with L.H., he now relies on two additional defense investigation reports memorializing interviews with Q.W. and Z.S., neither of which were presented to the PCR court.  We first address the procedural deficiencies with defendant's newly minted arguments and then address the merits of defendant's claims.

"Determining which witnesses to call to the stand is one of the most difficult strategic decisions that any trial attorney must confront."  State v. Arthur, 184 N.J. 307, 320 (2005).  The decision is generally informed by the testimony expected to be elicited; the possibility of impeachment, both by prior inconsistencies or conflicting testimony by other witnesses; and the witness's general credibility.  Id. at 320-21.  Consequently, where a defendant's ineffective assistance of counsel claim is based on a failure to investigate or call a witness, the defendant "must assert the facts that would have been revealed, 'supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification.'"  State v. Petrozelli, 351 N.J. Super. 14, 23 (App. Div. 2002) (quoting State v. Cummings, 321 N.J. Super. 154, 170 (1999)).

As noted, defendant provided the PCR court with a March 21, 2013 report prepared by defense investigator Francis Sullivan following an interview with L.H. According to that report, sometime "around the end of January" L.H. saw S.B., the State's eyewitness, and identified herself as the mother of defendant's child. S.B. allegedly told L.H. that the gun belonged to Sam, an unrelated third party. S.B. then allegedly told L.H. that defendant "owed her money and if she does this favor for [defendant] by putting the blame on [Sam], [she] wants [defendant] to pay her the money when he gets out." The report is signed by L.H. and Sullivan, and it is notarized.

Defendant next provides for the first time on appeal a June 16, 2011 report by defense investigator Stephanie Penna summarizing an interview with Q.W., a Neptune resident. Q.W. allegedly told Penna that on the day defendant was arrested, Sam visited her home in a "grayish color truck." Q.W. also saw him driving this truck in Asbury Park at some point that day before he came to her home. The report is unsigned and unsworn.

Defendant also provides us, again for the first time, a March 20, 2013 defense investigation report by Sullivan following a visit to Z.S., a friend of S.B., in the Monmouth County Correctional Facility. According to that report, Z.S. stated that he was visiting S.B. at her home on an unknown date when S.B.

told him she was "thinking about putting a gun in [defendant's] car." Z.S. did not see S.B. or anyone else put a gun in defendant's car and informed Sullivan that he would not testify at defendant's trial. That report is signed only by Sullivan and, again, is not accompanied by a sworn oath or affidavit.

We emphasize again that defendant provided only the L.H. investigation report to the PCR court. A document presented for the first time on appeal, which was "not before the trial court is improperly before us . . . [and is] a 'gross violation of appellate practice and rules.'" State v. Phillips, 176 N.J. Super. 495, 500 n.1 (App. Div. 1980) (quoting Middle Dep't Insp. Agency v. Home Ins. Co., 154 N.J. Super. 49, 56 (App. Div. 1977)).

Despite this dispositive procedural infirmity, we nonetheless address the merits of defendant's claims regarding the witnesses identified in the aforementioned reports. Because defendant failed to provide affidavits or certifications from any of the potential witnesses he listed, any ineffective assistance of counsel claims related to counsel's failing to call these witnesses necessarily fail. See Petrozelli, 351 N.J. Super. at 23 (quoting Cummings, 321 N.J. Super. at 170). Furthermore, there is no evidence that the investigators themselves swore to the contents of the reports and no indication that they had relevant personal knowledge that would be admissible under Rule 1:6-6.

13

Even if we considered the statements in the three investigative reports defendant provides on appeal, defendant presents nothing more than conclusory and insufficient allegations that trial counsel's performance was inadequate. Specifically, the investigation report memorializing the interview with Q.W. appears to be an attempt to raise a third-party guilt claim, which could necessitate an evidentiary hearing. See State v. Ways, 180 N.J. 171, 188 (2004) (holding, in the context of a newly discovered evidence claim, that "evidence that supports a defense, such as alibi, third-party guilt, or a general denial of guilt would be material"). The entirety of defendant's claim, however, is that Q.W. saw Sam on the same day that the police discovered the gun in defendant's truck, and that he was also driving a gray truck at the time. In light of the substantial evidence that defendant placed a gun in the truck, and the testimony that he regularly drove that vehicle, the allegation that another person was driving a similar vehicle in the area that same day does not raise a credible argument of third-party guilt and the failure of trial counsel to call Q.W. as a witness does not establish that defendant's trial counsel was ineffective.

The defense investigation reports memorializing interviews with Z.S. and L.H. seek to call into question the credibility of S.B and are similarly insufficient to demonstrate counsel's ineffective assistance. Z.S. allegedly claimed that S.B.

was planning to put a gun in defendant's car but that he refused to testify to that fact. Defendant failed to establish that the failure of his counsel to call an unwilling witness with vague, non-corroborative proofs established the first prong of the Strickland/Fritz test.

Similarly, L.H.'s statements memorialized in the third defense investigation report attempt to impeach S.B.'s credibility by suggesting S.B. was lying at trial and tried to solicit money in exchange for not testifying. Those statements, however, contradict a different statement she gave to police on April 2, 2013, the day S.B. testified at trial. When speaking to a police detective regarding the incident, L.H. allegedly stated that the only thing she could testify about was a conversation she had with S.B. approximately two months prior when S.B. "told her that she would not be testifying in [defendant's] trial." Had L.H. testified at trial regarding the statements she made to the defense investigator, she would face a substantial attack on her credibility as a result of the more recent contradictory statement to police. As the decision to not call L.H. was within the sound discretion of trial counsel, see Arthur, 184 N.J. at 320, the introduction of this additional investigation report, and the statements contained therein, are insufficient to establish a prima facie showing of ineffective assistance.

In any event, defendant also fails to satisfy the prejudice prong of Strickland/Fritz. With respect to Q.W., the possibility that she saw another individual driving a similar truck on the day of the incident ignores the substantial evidence in the record that defendant regularly drove the truck and, based on S.B.'s testimony, placed the gun under the rear passenger seat of the truck.

As to Z.S. and L.H.'s statements in the March 20, 2013 and March 21, 2013 investigation reports that addressed S.B.'s credibility, the trial record establishes that defendant's trial counsel extensively attacked her credibility on cross-examination and in his closing statement. In closing arguments, he emphasized inconsistencies in S.B.'s testimony compared to her original police statement including whether she actually heard and witnessed the events she described, the length of time before she reported the incident to the police, and her description of the individual who was with defendant that morning. He also attacked her credibility by citing pending drug charges against her. The jury nonetheless found S.B.'s accounting of events credible.

As none of the witness statements in the three investigation reports provide clear exonerating information, and given the weight of evidence presented by the State against defendant combined with counsel's cross-

examination of S.B., we conclude defendant failed to establish the result of the trial would have been different had his counsel called these individuals to testify.

IV.

In point I.A.3, defendant claims his trial counsel was ineffective for failing to object to the admission of still photographs from a security camera recording depicting the scene of the incident and for opening the door to rebuttal testimony regarding that evidence. More specifically, defendant asserts that his trial counsel was ineffective for calling Sullivan, the defense investigator, to testify, thereby allowing J.R., the public safety director for the Asbury Park Housing Authority and the person in charge of the security cameras on the nearby buildings, to testify as a rebuttal witness. We disagree.

First, we note that defendant raised a different argument about the surveillance video stills before the PCR Court. Before the PCR court, defendant alleged that his trial counsel was ineffective for failing to object to the State's introduction of only still photographs of security camera footage as the complete video would have contradicted S.B.'s testimony and decreased the chance he would be convicted. On appeal, defendant claims that J.R.'s testimony "greatly prejudiced" him and that his testimony demonstrated "that a video existed, that the State retrieved it, but that it did not capture the vehicle . . . [and] left the jury

17

with the lasting impression that the State did do a thorough investigation of the case and rehabilitated Officer Pettway's testimony." As this claim was not raised before the PCR judge, it is not properly before us. See State v. Robinson, 200 N.J. 1, 20 (2009) (We do not "consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest." (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973))).

Even considering the merits of defendant's new arguments, we are satisfied that he has failed to establish a prima facie showing of ineffective assistance. During cross-examination, defendant's trial counsel interrogated Officer Pettway about why he did not retrieve security camera footage from nearby buildings immediately after impounding the car. As defendant concedes in his appellate brief, counsel elicited "testimony that was favorable to [defendant] showing that the State lacked a credible investigation of the events of May 10, 2011, and that there was a video of the street, allegedly where the car was parked, which the State did not retrieve."

Specifically, defendant's trial counsel established that at the time of the investigation, Pettway did not try to obtain footage from nearby cameras that

could have shown at least part of Washington Avenue, because he believed they were not operational. Pettway admitted he never asked J.R. whether the security cameras were working, although he conceded he could have easily done so. He assumed that the cameras weren't working because "[i]t's very rare the cameras work properly." Pettway did not attempt to locate security camera footage from the area until March 2013, in preparation for trial, and learned that another officer had pulled footage from one of the security cameras from the very early morning of May 10, 2011.

Defendant's counsel also called Sullivan, the defense investigator, who described photos and distance measurements he took of the area around Washington Avenue and specifically regarding the cameras on nearby buildings. He was unable to recover footage from the cameras from May 2011 when he investigated the scene in 2013. He testified that the security footage from the morning of May 10, 2011 was deleted roughly two weeks after that date.

J.R. testified that on May 10, 2011, the security cameras facing Washington Avenue were operational but that the security cameras pointed "straightforward," that all the cameras were stationary, and they could only be physically moved by climbing a forty-foot ladder and doing so by hand. According to J.R., the cameras would not capture all of Washington Avenue but

19

would have certain "blind spots" which he described to the jury using visual aids.

J.R. then described the still from security video footage pulled from the same day as the incident. The still was from the camera on Building Five which faced a housing project driveway on Washington Avenue. Defendant's trial counsel did not object to the still, which was shown to the jury. J.R. testified that based on the prosecutor's and S.B.'s description of where defendant's car was parked, the car would not have been captured on the surveillance footage. On cross-examination, J.R. again testified that the camera on Building Five would not have caught the section of Washington Avenue where defendant's car was parked although he admitted that the camera on Building Six could have captured a car driving down Washington Avenue.

The record reflects that defendant's trial counsel then thoroughly attacked the police for failing to obtain available security footage from the area and used this failure to raise an inference of mistaken identity and otherwise call into question the State's case. He attacked Pettway's investigation extensively in closing and suggested that if Pettway had recovered video from Building Five, the camera could have shown someone placing the gun in the vehicle and driving to or from the scene. He also argued that footage from Building Six would have

shown someone driving the car on Washington Avenue, potentially identifying another culprit. The State conceded that Pettway made mistakes and "missed things" in the investigation, including by failing to recover the security footage.

Consequently, there is no indication that J.R.'s rebuttal testimony and stills from the security camera video strengthened the argument that Officer Pettway did a thorough investigation. On the contrary, defendant's trial counsel raised credible arguments that the cameras could have depicted the surrounding scene and perhaps shown a third party, at a minimum, was in possession of the truck and could have placed a gun in it. Viewing the "totality of counsel's performance in the context of the State's evidence of defendant's guilt," as required, demonstrates counsel performed effectively under the circumstances. State v. Castagna, 187 N.J. 293, 314 (2006).

With respect to the second Strickland/Fritz prong, apart from defendant's bare claim that J.R.'s testimony made it appear that the State did a thorough investigation and "rehabilitated Officer Pettway's testimony," he presented no competent evidence rebutting J.R.'s testimony that any footage from the security cameras would not have captured the particular section of Washington Avenue where his car was parked.

21

Moreover, as noted, there was substantial circumstantial evidence that defendant regularly drove the truck, including traffic citations in his name and identifying documents in the car, which accompanied S.B.'s testimony that he put a gun under the back seat. Given the strong evidence that he was in possession of the car and placed the gun in it, we can discern no prejudice from this testimony.

V.

Last, we note that defendant's claim in point II that he was entitled to an evidentiary hearing is without merit. Hearings in such cases are discretionary. R. 3:22-10. Trial courts should grant evidentiary hearings only if the defendant has presented a prima facie claim of ineffective assistance, material issues of disputed fact lie outside the record, and resolution of the issues necessitate a hearing. R. 3:22-10(b); State v. Porter, 216 N.J. 343, 355 (2013). Here, under these unique circumstances, a hearing was not warranted. Judge O'Brien correctly concluded that defendant failed to establish a prima facie case of ineffective assistance of counsel and, therefore, we find that he did not abuse his discretion in denying defendant's request for a hearing.

To the extent not addressed, defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION