**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1653-20

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

QUAMEIR T. WATERS,
a/k/a COO COO, and
QUAMEIER WATERS,

 Defendant-Appellant.

_____

Submitted June 9, 2022 — Decided June 24, 2022

Before Judges Mawla and Alvarez.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Indictment No. 13-07-0595.

Joseph E. Krakora, Public Defender, attorney for appellant (Anderson D. Harkov, Designated Counsel, on the brief).

Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for respondent (Kaila L. Diodati, Assistant Prosecutor, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant Quameir T. Waters appeals from a July 15, 2020 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing.[1] We affirm.

We previously recounted the facts of defendant's case when we affirmed his convictions and sentence. State v. Waters, No. A-5382-14 (App. Div. Sept. 21, 2017) (slip op. at 1-4). To summarize, on November 13, 2012, defendant, Octavis Spence, and others went to a gathering at Anthony and Thomas Nieves'[2] apartment. The next morning, Spence and defendant got into a heated argument, which led to defendant firing two shots at Spence, hitting him once in the back and paralyzing him from the waist down. Defendant fled and the gun was never recovered.

Spence identified defendant as the shooter and described the weapon as a dark, semiautomatic handgun. Anthony also gave police a statement identifying defendant. Police recovered one bullet lodged in a wall and two empty casings

---

[1] The order is dated July 15, 2020, but it was filed on July 22, 2020.

[2] We refer to Anthony by his first name because he shares a surname with Thomas. We intend no disrespect.

A-1653-20

fired from a semiautomatic weapon. When police arrested defendant, he denied being at the Nieves' apartment the morning of the shooting claiming he was fishing; however, he later admitted he was present. Defendant explained he and Spence were arguing over a woman and conceded he wanted to fight Spence but denied shooting him. Defendant claimed another man shot the victim but could not identify or describe him.

In a search, incident to defendant's arrest, police recovered two cell phones. Pursuant to a warrant, police recovered a text sent by defendant to a woman named Marianna on November 14, 2012, at 1:01 p.m., stating: "I got into some deep shit, bae." Police also retrieved roughly 2,000 images from the phones, including 200 deleted images. One deleted image showed defendant holding a black handgun pointing at the camera and another showed a semiautomatic handgun next to a magazine. Police could not determine the gun's caliber or where the images were taken.

Defendant was indicted on one count of attempted murder, three counts of aggravated assault, and three weapons charges. Prior to trial, the State made a plea offer, which it withdrew, but then re-instated. Defense counsel filed various pre-trial motions, including a motion to reduce bail, which was denied on August 18, 2014. At this appearance, defense counsel argued the victim was "nowhere

3

to be found" and Anthony had given police "different stories" about what he saw the day of the shooting. The State disagreed and argued its case had "got[ten] stronger" with the passage of time because it had 1) eyewitnesses, including Spence, who it had no reason to believe would not attend trial, 2) the cell phone evidence, and 3) defendant's statement. The judge also reviewed the status of the plea negotiations and the State's plea offer with defendant because the plea offer was expiring that day.

Under oath, defendant confirmed he understood the magnitude of the pretrial conference, the finality of the State's plea offer, and that he would be unable to control the outcome of a jury trial. The following colloquy ensued:

> [The court]: All right. Now, according to the information that has been provided to me here, and a copy of which . . . you went over with your attorney, you understand that you are facing a potential life sentence if you're convicted in this case . . . ?
>
> [Defendant]: Yes.
>
> [The court]: All right. And one of the things I note here . . . is that you are [subject to] a discretionary extended term and I've already been informed by the State that if you are convicted, they will be seeking an extended term.
>
> [The defendant]: Yes.
>
> [The court]: . . . You should proceed with the understanding that there is a high likelihood that I

4

would issue an extended term if you're convicted. You understand that?

[The defendant]: Yes.

The judge then asked the State to reiterate its "last, best offer." The State previously offered defendant an open plea to second-degree aggravated assault, a cap of ten years' incarceration subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, and no extended term. However, after negotiations with defendant and defense counsel, "who rather convincingly represented his client's position, the State removed uncertainty and offered an alternative of eight years[ subject to] NERA . . . . So[,] the offer is either plead open or take a known eight, NERA, and that is the State's absolute final offer."

The prosecutor explained if the matter were tried and defendant convicted, the State would seek an extended term because defendant was a persistent offender due to "previous convictions . . . involv[ing] weapons and assaultive behavior, not to mention [twenty-three] other arrests, [and] a lengthy rap sheet." As a result, if defendant were convicted of the attempted murder offense "instead of ten to [twenty years], he would face a mandatory . . . [twenty-five] to life," subject to NERA. "On the second[-]degree . . . [a]ggravated assault, which is NERA, instead of five to ten, . . . that would be a ten to [twenty.] The weapons

5

offenses, instead of being a second[-]degree five to ten, they would be . . . into the ten to [twenty] range . . . ."

The judge noted if defendant accepted the State's offer, his eight year NERA sentence "would be a six year, nine month and [twenty-two] day period of parole ineligibility[,]" further reduced by the nearly two-year time period defendant spent in jail awaiting trial. If defendant proceeded to trial and was convicted, the judge calculated his NERA sentence to sixty-three years, nine months, and three days.

Defendant responded as follows: "No disrespect to you, [y]our [h]onor, but I don't care." Nonetheless, the judge offered defendant more time to think about the offer. Defendant responded he wanted to use the time to talk to the judge and did not need to talk to his lawyer. Defendant then stated

> I offered [the prosecutor] . . . .
>
> . . . seven [years subject to NERA]. He said no. Why not? Why not . . . seven [years subject to NERA]? You want a[n] eight. I want a seven. You want a conviction. I want to go home earlier than eight years.
>
> . . . I'm [twenty-nine] years old. I'll be [thirty] this year. I got kids to go home to, just like you all got kids to go home to every night.
>
> If he don't want to give me what I want, we go to trial and I risk losing everything. That's just how I feel.

A-1653-20

Notwithstanding defendant's statement, the judge stepped off the bench to give him time to consider his position and discuss the matter with counsel. When the judge returned, eighteen minutes later, defendant told him he wished to proceed to trial.

The matter was tried before a jury and a different judge. Defendant moved in limine to bar, among other things, photos of the gun, arguing they were inadmissible under N.J.R.E. 403 and 404(b). He argued neither Spence nor Anthony could identify the gun's specifics, and the pictures did not show where or when they were taken, whether it was the gun used in the shooting, or if it was a gun at all.

The trial judge held an evidentiary hearing. Cumberland County Prosecutor's Office Detective Raymond Cavagnaro testified and explained the process of retrieving the data, including the deleted gun photos from defendant's cell phones. He said a picture of defendant was taken around November 7, 2012, at 5:01 p.m. The image of the gun was taken around November 10, 2012, at 2:59 p.m., a photo of the gun and the bullets was taken November 13, 2012, at 5:59 p.m., and a picture of defendant holding the gun was taken around November 13, 2012, at 7:58 p.m. Defendant sent the text to Marianna around

7

November 14, 2012, at 1:01 p.m. The images showing a gun were deleted around November 14, 2012, at 12:01 a.m.

Defendant argued the images were not evidential because their creation and deletion took place outside the time frame of the crime. Therefore, they were inadmissible, as evidence of prior bad acts. The State argued the images were admissible to establish consciousness of guilt, were contemporaneous with the crime, and the best evidence of the gun defendant used since one was not found, considering Spence and Anthony indicated the gun was like the one in the pictures and the shell casings and projectile found at the scene. The State noted the images were not prior bad act evidence because gun possession in the home is legal and they were taken inside a private residence.

The trial judge analyzed the evidence pursuant to the four-prong test articulated in State v. Cofield, 127 N.J. 328, 338 (1992). He concluded the first prong was met because the photos of defendant holding a gun were relevant to whether he used it to commit the offenses. The second prong was met because the State showed the photos were contemporaneous with the shooting. The third prong, requiring the evidence be clear and convincing, was proven through Cavagnaro's testimony authenticating the extraction of the photos from defendant's phone and when the photos were taken and deleted. The fourth

Cofield prong was met because the probative value of the photos was not outweighed by the prejudice because the jury would ultimately determine the weight accorded to this evidence. The judge denied the motion.

At trial, Spence testified and identified defendant as the shooter and the type of gun he used. However, Spence could not say whether a gun defendant was holding in a picture was the same one used to shoot him. Anthony also testified and identified defendant as the shooter. He was shown pictures of defendant with a gun and confirmed defendant used a black nine-millimeter automatic like the one in the pictures. State Police Detective Edward Brita testified and identified the projectile and casings from the crime scene as coming from a nine-millimeter semiautomatic gun.

State Police Detective Arthur Barilotti testified he was the lead detective. He conducted about a dozen interviews, and defendant emerged as the only suspect. After Barilotti concluded his testimony, defense counsel recalled him to ask whether he took a statement from defendant in which he denied involvement in the shooting. Barilotti testified defendant denied shooting Spence, claiming he was fishing the day of the incident, but then admitted he was in the apartment and claimed there was another shooter whom he could not identify. Defendant then told Barilotti he was in the apartment, had a "beef"

with and was fighting Spence over a woman. Barilotti testified it is not uncommon for people to initially lie before telling police what happened.

Following summations, the judge charged the jury, including that it could consider the deleted photos as consciousness of guilt evidence. We reproduced the charge in our prior opinion and incorporate it here by reference. See Waters, slip op. at 15-16. Defendant was convicted on all counts and received an aggregate fifty-eight-year NERA sentence.

Defendant filed a PCR petition, raising several arguments, including that pursuant to Lafler v. Cooper, 566 U.S. 156 (2012), the State should give him its original plea offer, or an opportunity to renegotiate the plea, because trial counsel was ineffective for failing to advise defendant to take the plea or tell him the plea would expire. Defendant argued he received ineffective counsel because trial counsel recalled Barilotti back to the stand and questioned him regarding his statement to police. He also claimed appellate counsel was ineffective for not challenging the court's decision to admit the photos. Defendant sought an evidentiary hearing to explore the disputed facts, including his communications with trial counsel regarding the plea.

The PCR judge rejected defendant's arguments noting the plea was discussed on the record, defendant received "several continuances to get the plea

10

offers lowered," and the judge discussed "what the plea offer would be, or what the potential sentence could be" if defendant was found guilty. The judge noted even after defendant rejected the plea, the judge gave him additional time "to talk to his attorney again and . . . [defendant] was aware that the offer would expire and that his attorney made multiple attempts to get [defendant] to accept the offer." The PCR judge dismissed defendant's argument as without merit and found his claims regarding counsel's performance contradicted by the record. He also rejected the argument appellate counsel was ineffective for not challenging the trial judge's evidentiary ruling admitting the photos into evidence.

Defendant raises the following points on appeal:

> POINT ONE — THE PCR COURT ERRED WHEN IT FAILED TO GRANT DEFENDANT'S REQUEST FOR AN EVIDENTIARY HEARING BECAUSE THE FAILURE OF TRIAL COUNSEL TO EXPLAIN TO DEFENDANT THE RISKS AND CONSEQUENCES OF TAKING THIS CASE TO TRIAL AND EXPOSING HIMSELF TO A SENTENCE OF LIFE IN PRISON, AS OPPOSED TO ACCEPTING THE STATE'S PLEA OFFER OF AN EIGHT YEAR NERA SENTENCE, COULD ONLY BE EXPLORED IN AN EVIDENTIARY HEARING IN THE ABSENCE OF ANY STATEMENT BY TRIAL COUNSEL TO DEFENDANT ON THE RECORD THAT HE ADVISED DEFENDANT TO ACCEPT THE PLEA OFFER AND THAT SAID PLEA OFFER WOULD

NO LONGER BE AVAILABLE AFTER THE PRETRIAL CONFERENCE.

POINT TWO — THE FAILURE OF TRIAL COUNSEL TO ADVISE DEFENDANT TO ACCEPT THE STATE'S PLEA OFFER OF AN EIGHT YEAR NERA SENTENCE CAME AS A DIRECT RESULT OF HIS DERELICTION OF HIS DUTY TO EXPLAIN THE RISK AND CONSEQUENCES OF GOING TO TRIAL AND THE EXTENT AND IMPACT OF THE EVIDENCE AGAINST DEFENDANT, RESULTING IN DEFENDANT BEING SENTENCE[D] TO FIFTY-EIGHT YEARS IN PRISON, THUS DEPRIVING DEFENDANT OF HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL.

POINT THREE — THE DECISION BY TRIAL COUNSEL TO CALL THE LEAD DETECTIVE AS A DEFENSE WITNESS KNOWING THIS WOULD OPEN THE DOOR TO THE STATE HAVING THE DETECTIVE INFORM THE JURY DEFENDANT INITIALLY LIED TO THE POLICE ABOUT HIS WHEREABOUTS AT THE TIME OF THE SHOOTING, LATER ADMITTED TO BEING PRESENT WHEN THE SHOOTING OCCURRED, AND ARGUED WITH THE VICTIM BEFOREHAND, WAS SO ASTONISHINGLY MISINFORMED AS TO CONSTITUTE INEFFECTIVE ASSISTANCE OF COUNSEL IN AND OF ITSELF.

POINT FOUR — THE FAILURE OF APPELLATE COUNSEL TO CHALLENGE ON DIRECT APPEAL THE TRIAL COURT'S ADMISSION OF PHOTO[]S EXTRACTED FROM DEFENDANT'S CELL PHONE, ALLEGEDLY DEPICTING HIM HOLDING A GUN AT LEAST ONE DAY PRIOR TO THE INCIDENT THAT LED TO THE VICTIM'S SHOOTING, BY ARGUING THEIR ADMISSION VIOLATED

12

N.J.R.E. [404(b)], DEPRIVED DEFENDANT OF HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL.

In his pro se brief, defendant argues:[3]

POINT ONE — DEFENDANT . . . WAS DEPRIVED OF DUE PROCESS AND OF A FAIR TRIAL WHERE DEFENDANT WOULD SHOW THAT THE VICTIM HAD PROVIDED FALSE TESTIMONY AGAINST DEFENDANT. DEFENDANT WILL SHOW THAT THERE IS EVIDENCE OF THE RECORD OF THIRD PARTY GUILT.

POINT TWO — . . . DEFENDANT . . . MOVES BEFORE THIS COURT TO PRESENT NEWLY PRESENTED EVIDENCE THAT WAS PREVIOUSLY UNAVAILABLE TO DEFENDANT.

## I.

We review a judge's denial of PCR without an evidentiary hearing de novo. State v. Jackson, 454 N.J. Super. 284, 291 (App. Div. 2018). To succeed on a claim for ineffective assistance of counsel, a defendant must establish both prongs of the Strickland v. Washington[4] test. State v. Parker, 212 N.J. 269, 279-80 (2012). Under the first prong, counsel's representation must be objectively unreasonable. State v. Pierre, 223 N.J. 560, 578 (2015). Under the second

---

[3] We granted defendant's motion to file a pro se supplemental brief and a pro se reply brief after the initial briefing schedule elapsed.

[4] 466 U.S. 668, 687 (1984).

prong, a "reasonable probability [must exist] that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 583 (quoting Strickland, 466 U.S. at 694).

In reviewing ineffective assistance of counsel claims, we apply a strong presumption that defense counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. "[C]omplaints 'merely of matters of trial strategy' will not serve to ground a constitutional claim of inadequacy of representation by counsel." State v. Fritz, 105 N.J. 42, 54 (1987) (quoting State v. Williams, 39 N.J. 471, 489 (1963)); see also State v. Nash, 212 N.J. 518, 543 (2013) ("The test is not whether defense counsel could have done better, but whether he [or she] met the constitutional threshold for effectiveness.").

The standard of review for assessing ineffective assistance of appellate counsel is the same Strickland two-prong test. State v. Gaither, 396 N.J. Super. 508, 513 (App. Div. 2007). Appellate counsel is not required to bring all non-frivolous claims or claims that are "legally unworthy of pursuit." State v. Webster, 187 N.J. 254, 256 (2006).

We reject the arguments raised by defendant in points one and two of his brief related to the need for an evidentiary hearing to explore what plea advice

counsel gave defendant for the same reasons expressed by the PCR judge. These arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

In point three, defendant argues trial counsel was ineffective for recalling Barilotti, who testified defendant provided police with a false alibi before admitting he was in the apartment and in an altercation with Spence. Defendant claims this error "compounded the mistake" of going to trial and further demonstrates how counsel's performance prejudiced the outcome.

Trial strategy is a matter left to the discretion of competent trial counsel. State v. Coruzzi, 189 N.J. Super. 273, 321 (App. Div. 1983). Informed strategic choices "are virtually unchallengeable[.]" Strickland, 466 U.S. at 690. Strategic choices made after limited investigation are given great deference and assessed for reasonableness. State v. Petrozelli, 351 N.J. Super. 14, 22 (App. Div. 2002). "[S]trategic miscalculations or trial mistakes are insufficient to warrant reversal 'except in those rare instances where they are of such magnitude as to thwart the fundamental guarantee of [a] fair trial.'" State v. Castagna, 187 N.J. 293, 315 (2006) (second alteration in original) (quoting State v. Buonadonna, 122 N.J. 22, 42 (1991)).

The fact that a strategy fails does not amount to ineffective assistance of counsel. State v. Bey, 161 N.J. 233, 251 (1999). "[A] defense attorney's decision concerning which witnesses to call to the stand is 'an art,' and a court's review of such a decision should be 'highly deferential[.]'" State v. Arthur, 184 N.J. 307, 321 (2005) (quoting Strickland, 466 U.S. at 689, 693).

Counsel's decision to recall Barilotti was to bolster the claim that defendant told Barilotti there were other people present in the apartment at the time of the shooting. Counsel's strategy was not thoughtless because, in both the defense's opening and summation, trial counsel told the jury Barilotti knew other people were in the apartment but failed to investigate who these people were. Pursuant to our de novo review, and given the deference owed to trial counsel's strategic decision making, we discern no reversible error.

Finally, we affirm the evidentiary decisions made by a trial court if they are supported by sufficient, credible evidence in the record and are not clearly mistaken. State v. Hathaway, 222 N.J. 453, 467 (2015). We cannot conclude appellate counsel was ineffective for failing to challenge the photographic evidence adduced at trial. The trial judge's careful analysis of the Cofield factors before admitting the photo evidence was not clearly mistaken and would be entitled to our deference had it been raised on the direct appeal. Further, we

previously held the jury was properly instructed that the photo evidence was limited to the consciousness of guilt. <u>Waters</u>, slip op. at 18. Given this, and the other evidence implicating defendant, including his statements, the text message, and eyewitness testimony, we are unconvinced appellate counsel's decision not to challenge the photo evidence constituted ineffective assistance. Appellate counsel was not obliged to make arguments that lacked merit. <u>Webster</u>, 187 N.J. at 256-57.

To the extent we have not addressed an argument raised by defendant it is because it lacks sufficient merit to warrant discussion in a written opinion. <u>See</u> <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1653-20