**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0923-20

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

SURPRIS OPHILIEN,
a/k/a SUPRIS OPHILIEN,
SURPRIS D. SPHILIEN,
and SURPRIS OPHILLEN,

     Defendant-Appellant.

_____

Submitted March 8, 2022 – Decided June 30, 2022

Before Judges Currier and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment Nos. 14-10-0940, 15-12-0777 and 15-12-0778.

Joseph E. Krakora, Public Defender, attorney for appellant (Andrew R. Burroughs, Designated Counsel, on the brief).

William A. Daniel, Union County Prosecutor, attorney for respondent (Albert Cernadas, Jr., Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Surpris Ophilien appeals from the Law Division's: (1) May 19, 2020 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing and his motion to withdraw his guilty plea on convictions arising from a fatal motor vehicle accident he caused while driving under the influence of alcohol and eluding police; and (2) December 15, 2020 order denying his motion to reduce his sentence for good cause. We affirm.

I.

On July 18, 2015, Elizabeth police officers were dispatched to a nightclub in response to a report of a fight. While en route to the scene, a unit observed a green pick-up driving at a high rate of speed away from the club. Officers activated their overhead lights and sirens in an attempt to stop the vehicle. The pick-up did not stop, running through red lights and stop signs and taking evasive measures to elude the officers.

Ultimately, the pick-up was driven the wrong way up an exit ramp from the New Jersey Turnpike. Edward Coleman was driving his car in the correct direction down the ramp. The truck barreled head-on into Coleman's car.

The officers were close behind the pick-up and arrived shortly after the crash. They saw defendant crawl out of the truck through the driver's side

A-0923-20

window carrying a handgun. He ignored the officers' orders to stop, tossed the gun on the ground, and ran to an overpass. Defendant climbed the overpass fence and dropped twenty to thirty feet to the ground, where he was captured. No one other than defendant and Coleman was seen by the officers at the site of the crash and no other person was observed exiting the pick-up truck.

Police recovered a .45 caliber handgun where they saw defendant discard the weapon. Defendant was transported to the hospital, where officers smelled alcohol on his breath. Coleman died from his injuries shortly after the accident.

A grand jury indicted defendant, charging him with second-degree eluding a law enforcement officer, N.J.S.A. 2C:29-2(b); second-degree vehicular homicide, N.J.S.A. 2C:11-5; first-degree aggravated manslaughter by recklessly causing the death of another, N.J.S.A. 2C:11-4(a)(1); first-degree aggravated manslaughter by causing the death of another while eluding a law enforcement officer, N.J.S.A. 2C:11-4(a)(2); second-degree leaving the scene of an accident resulting in death, N.J.S.A. 2C:11-5.1; and second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1). A second indictment charged him with second-degree certain persons not to possess a firearm, N.J.S.A. 2C:39-7(b)(1).

On June 29, 2017, pursuant to an agreement, defendant entered a guilty plea to first-degree aggravated manslaughter by causing the death of another

while eluding a law enforcement officer and second-degree certain persons not to possess a firearm. He admitted under oath that he had been drinking alcohol, and possibly taking narcotics, before he decided to drive his truck, was speeding while eluding police, ignored red lights and stop signs, and caused the accident that killed Coleman. He also admitted he was in possession of a handgun while aware that he was prohibited from doing so because of prior felony convictions. The same day, defendant entered a guilty plea to a violation of probation, which had been imposed for his conviction of second-degree possession with intent to distribute a controlled dangerous substance within 500 feet of public property.[1]

On December 4, 2017, the court sentenced defendant on the manslaughter conviction in accordance with the plea agreement to a twenty-year term of imprisonment subject to the No Early Release Act, N.J.S.A. 2C:43-7.2 and for the certain persons conviction to a concurrent five-year term of imprisonment, with a five-year period of parole ineligibility. The court sentenced defendant to an eight-year term of imprisonment for the parole violation to be served concurrent to the sentences for manslaughter and the weapons conviction.

---

[1] The violation of probation was based on the crimes to which defendant was pleading guilty and his failure to complete a drug rehabilitation program.

Defendant appealed his sentence. We affirmed. State v. Ophilien, No. A-2405-17 (App. Div. Sep. 25, 2018).

Approximately a year later, defendant moved to withdraw his guilty plea. He alleged he pled guilty because he thought he was responsible for Coleman's death. However, he asserted, he did not truly know if he was guilty because of memory lapses and alcohol consumption on the night of the accident. He also argued his guilty plea was uninformed because his attorney did not effectively communicate with him, show him discovery, investigate the case, or explore and explain a potential intoxication defense. In addition, defendant cited new evidence, the affidavit of Laquana Robinson, obtained after his conviction, that he believes proves he was not driving the pick-up on the night of the accident.

Defendant subsequently filed a petition for PCR alleging ineffective assistance of trial counsel. In support of his claims, defendant reiterated the arguments he made in support of his motion to withdraw his guilty plea.

On May 19, 2020, Judge Robert Kirsch issued a thirty-six-page written opinion denying defendant's motion and dismissing his PCR petition without an evidentiary hearing. The judge exhaustively detailed what transpired at the plea hearing, noting the judge taking the plea

> inquired to ensure that defense counsel properly reviewed the unique facts and circumstances of

 A-0923-20

> [defendant's] case to assist [defendant] in making an informed decision on how he wished to proceed. For example, the court confirmed with [defendant] that his counsel reviewed and analyzed the legal and factual issues in the case; discussed with [defendant] the strengths and weaknesses of his case, both from his perspective and the [S]tate's perspective; reviewed with [defendant] "all the potential evidence and witnesses in the case" and how "each piece of evidence or witness may help or hurt [defendant];" and discussed with [defendant] the strength[s] and weaknesses of potential motions or defenses which may apply.

Judge Kirsch also noted that when defendant expressed reservations at the plea hearing with respect to whether his counsel had shown him all of the discovery, the court questioned defendant's counsel on the record. The attorney informed the court that "[w]e discussed – we met . . . more than several times, more than [ten] times . . . over the course of this case. I reviewed all the discovery, including the videotape discovery." Counsel clarified that the only discovery defendant had not seen were photographs of the outside of the pick-up's "black box" recovered from the crash site. The court then adjourned the hearing to allow defendant to review the photographs. When the hearing resumed, defendant expressed his desire to continue and pled guilty.

Judge Kirsch detailed defendant's factual admissions and his counsel's representation to the court that he had reviewed the intoxication defense with defendant during their "many meetings" and "that one of their principal

6

discussions was the difficulty in prevailing on such a defense." Defendant's counsel informed the court he explained to defendant the different mens rea requirements for the two manslaughter counts and how difficult it would be to prove his intoxication was so severe that his criminal conduct would be excused.

Judge Kirsch noted that at the plea hearing, the court read the model jury charge of "Intoxication Negating an Element of the Offense" to defendant and asked a series of questions to confirm counsel had explained the intoxication defense to defendant, particularly with respect to a charge alleging recklessness. See State v. Baum, 224 N.J. 147, 162 (2016) (holding that voluntary intoxication is not a defense where recklessness is an element of the crime). Although defendant was pleading guilty to the manslaughter charge alleging purposeful conduct, had he not pled guilty, he would have faced trial on the manslaughter charge alleging recklessness. After allowing defendant to consult with his attorney, the court asked if, despite his consumption of alcohol, defendant was cognizant of the recklessness of his behavior on the night of the accident. Defendant replied that "I knew what was going on, Your Honor." He admitted he knew driving the truck was reckless, he put people in danger, the police were trying to stop him, and that he decided to elude the officers.

With respect to the Robinson affidavit, which was executed more than three years after the night in question, Judge Kirsch found that the witness attested that she saw defendant outside the nightclub and described him as "kind of out of it" and "very intoxicated." Robinson attested that she saw a green pick-up truck pull up in front of the club driven by someone she did not recognize, and that she helped defendant get into the passenger side of the truck, which was then driven away by the unidentified driver. Robinson came forward after she saw a social media post by defendant stating he was incarcerated.

The judge concluded defendant satisfied none of the factors set forth in State v. Slater, 198 N.J. 145, 155 (2009), to justify withdrawal of a guilty plea after sentencing. The judge noted defendant's claim of innocence relies principally, if not exclusively, on the Robinson affidavit. He concluded, however, that even if the assertions made in the affidavit are true, Robinson was not present at the accident scene. As the judge noted, "there was a sufficient opportunity, out of [Robinson's] view after the green truck pulled away from the [c]lub, for [defendant] to take control of the vehicle and for the unidentified driver to exit the green truck." In addition, the judge noted, defendant's admissions comport with the officers' observation of a single person in the pick-

up before the crash, defendant crawling out the driver's side window after the crash, and no one other than defendant and the man he killed at the crash site.

Judge Kirsch also found defendant's claim he was not properly advised with respect to an intoxication defense did not warrant withdrawal of his plea. The judge noted that the court that took defendant's plea engaged in an exhaustive discussion of the defense's inapplicability to a charge alleging recklessness. The judge also rejected defendant's claim that his counsel did not provide adequate representation prior to entry of the plea. As the judge noted, defendant stated at the plea hearing he was satisfied with his counsel, and the hearing was adjourned to allow defendant to review photographs that he had not seen, after which he agreed to continue with his plea.

Judge Kirsch found defendant was facing up to fifty years in prison if convicted on all charges and substantially benefitted from the plea agreement, which he was not likely to have rejected, given the strength of the State's evidence. The judge also found the State would be at a significant disadvantage were it forced to try the case more than five years after the accident.

The judge rejected defendant's PCR claims, concluding he had not made a prima facie showing of ineffective assistance of counsel. Relying on the findings he made on defendant's motion to withdraw his plea, the judge found

A-0923-20

no merit in defendant's allegations concerning counsel's diligence, consultations, and advice. In short, the judge concluded defendant received effective representation prior to entry of his plea.

The judge also concluded defendant's counsel could not be faulted for not finding Robinson prior to entry of the plea. Defendant did not identify Robinson as a witness. He has no recollection of seeing her in the crowded nightclub. She admitted the night in question was her first visit to the club and that she never returned. Defendant does not explain how his counsel would have identified her as a witness. In addition, as explained above, the judge concluded Robinson's affidavit does not address what transpired after defendant left the club and is contradicted by the eyewitness testimony of the officers. Thus, the judge found defendant did not make a prima facie showing of either prong established in Strickland v. Washington, 466 U.S. 668, 686 (1984), and could not demonstrate that but for counsel's errors he would not have pled guilty and insisted on going to trial. See State v. Gaitan, 209 N.J. 339, 350-51 (2012). Thus, the court concluded, defendant was not entitled to PCR or a hearing.

Defendant later moved to reduce his sentence for good cause pursuant to Rule 3:21-10(b)(3). While recognizing that a sentence of between ten and thirty years was required by statute for his manslaughter conviction, defendant argued

his sentence should be reduced "in good faith, so that I may live as a productive member of society." In support of his motion, defendant argued his crimes were the result of poor decision making, he has matured, and has made strides towards rehabilitation while incarcerated. The State opposed the motion.

On December 15, 2020, the trial court entered an order denying defendant's motion to reduce his sentence. The court held defendant lacked standing to bring the motion because it was not a "joint application of the defendant and prosecuting attorney." See R. 3:21-10(b)(3).

This appeal followed. Defendant makes the following arguments.

> POINT I
>
> AS TRIAL COUNSEL FAILED TO ADEQUATELY INVESTIGATE A VOLUNTARY INTOXICATION DEFENSE, DEFENDANT DID NOT RECEIVE EFFECTIVE LEGAL REPRESENTATION WHEN HE ENTERED A GUILTY PLEA.
>
> POINT II
>
> AS DEFENDANT HAS ESTABLISHED THAT HE DID NOT KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY ENTER A GUILTY PLEA AND HE HAS A COLORABLE CLAIM OF INNOCENCE, THE PCR COURT ERRED WHEN IT DENIED HIS MOTION TO VACATE HIS GUILTY PLEA.

11

POINT III

AS THERE WAS A GENUINE ISSUE OF MATERIAL FACT IN DISPUTE, AN EVIDENTIARY HEARING WAS REQUIRED.
POINT IV

THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION FOR REDUCTION OF SENTENCE.

## II.

Because defendant's motion to withdraw his guilty plea and PCR petition rely on the same facts and arguments, we address them together. Withdrawal of a guilty plea after sentencing is warranted only "to correct a manifest injustice." R. 3:21-1. "[A] plea may only be set aside in the exercise of the court's discretion." Slater, 198 N.J. at 156. The court considers four factors to determine if withdrawal of a guilty plea is warranted: "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." Id. at 157-58. "No factor is mandatory; if one is missing, that does not automatically disqualify or dictate relief." Id. at 162.

"[T]he trial court's denial of defendant's request to withdraw his guilty plea will be reversed on appeal only if there was an abuse of discretion which

renders the lower court's decision clearly erroneous." State v. Simon, 161 N.J. 416, 444 (1999); State v. O'Donnell, 435 N.J. Super. 351, 372 (App. Div. 2014).

Under Rule 3:22-2(a), a defendant is entitled to post-conviction relief if there was a "[s]ubstantial denial in the conviction proceedings of defendant's rights under the Constitution of the United States or the Constitution or laws of the State of New Jersey[.]" "A petitioner must establish the right to such relief by a preponderance of the credible evidence." State v. Preciose, 129 N.J. 451, 459 (1992). "To sustain that burden, specific facts" which "would provide the court with an adequate basis on which to rest its decision" must be articulated. State v. Mitchell, 126 N.J. 565, 579 (1992).

The Sixth Amendment to the United States Constitution and Article I, Paragraph 10 of the New Jersey Constitution guarantee criminal defendants the right to the effective assistance of counsel. State v. O'Neil, 219 N.J. 598, 610 (2014) (citing Strickland, 466 U.S. at 686; State v. Fritz, 105 N.J. 42, 58 (1987)). To succeed on a claim of ineffective assistance of counsel, the defendant must meet the two-part test established by Strickland, and adopted by our Supreme Court in Fritz. 466 U.S. at 687; 105 N.J. at 58.

Under Strickland, a defendant first must show that his or her attorney made errors "so serious that counsel was not functioning as the 'counsel'

guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. Counsel's performance is deficient if it "[falls] below an objective standard of reasonableness." Id. at 688.

A defendant also must show that counsel's "deficient performance prejudiced the defense[,]" id. at 687, because "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[,]" id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the trial. Ibid. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Id. at 697; State v. Marshall, 148 N.J. 89, 261 (1997). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

We review a judge's decision to deny a PCR petition without an evidentiary hearing for abuse of discretion. State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013) (citing Marshall, 148 N.J. at 157-58). A hearing is required only when: (1) a defendant establishes a prima facie case in support of PCR; (2) the court determines that there are disputed issues of material fact that

cannot be resolved by review of the existing record; and (3) the court determines that an evidentiary hearing is required to resolve the claims asserted. State v. Porter, 216 N.J. 343, 354 (2013) (citing R. 3:22-10(b)). "A prima facie case is established when a defendant demonstrates 'a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits.'" Id. at 355 (quoting R. 3:22-10(b)).

"[T]o establish a prima facie claim, a petitioner must do more than make bald assertions that he was denied effective assistance of counsel." Ibid. (quoting State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999)). A PCR petition must be "accompanied by an affidavit or certification by defendant, or by others, setting forth with particularity[,]" State v. Jones, 219 N.J. 298, 312 (2014), "facts sufficient to demonstrate counsel's alleged substandard performance[,]" Porter, 216 N.J. at 355 (quoting Cummings, 321 N.J. Super. at 170); see also R. 3:22-10(c). When a defendant argues that his attorney failed to call an alibi witness, "he must assert the facts that would have been revealed, 'supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification.'" State v. Petrozelli, 351 N.J. Super. 14, 23 (App. Div. 2002) (quoting Cummings, 321 N.J. Super. at 170).

A-0923-20

Having carefully reviewed defendant's arguments in light of the record and applicable legal principles, we affirm the May 19, 2020 order for the reasons stated by Judge Kirsch in his thoughtful and well-reasoned written opinion. Defendant has not demonstrated he is entitled to withdraw his guilty plea to prevent a manifest injustice. Nor has defendant made a prima facie showing of ineffective assistance of counsel prior to the entry of his guilty plea. He was apprised that an intoxication defense to the manslaughter charge was not likely to be successful and expressed his satisfaction with counsel at the plea hearing. In addition, the belated appearance of Robinson's affidavit does not meaningfully call defendant's guilt into question and is not evidence of an ineffective investigation by defendant's trial counsel.

III.

We also agree with Judge Kirsch's conclusion that defendant's "good cause" application to reduce his sentence was substantively deficient. Rule 3:21-10(b)(3) allows an application to reduce a sentence more than sixty days after entry of a judgment of conviction "for good cause shown upon the joint application of the defendant and the prosecuting attorney . . . ." Defendant's application, made a year after entry of the judgment of conviction, was opposed by the State. The court is not authorized to reduce defendant's sentence because

he believes he has been rehabilitated and deserves a chance to return to society before completing his lawfully entered term of imprisonment. Defendant may seek to demonstrate his rehabilitation before the Parole Board when he is eligible to be considered for parole.

Defendant's argument that the prosecuting attorney's decision not to join his application is subject to judicial review for an abuse of discretion is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0923-20